## E. J. MILLER

*v.*

## MARY ELIZABETH MCALISTER *et al.*

*Opinion filed June 19, 1902.*

1. DEEDS—*grantee must be in being at the time deed is executed.* A deed to the grantor's daughter, "and her children born and to be born," passes the title to the daughter and such children as are in existence at the time the deed is executed, as tenants in common, but passes no interest as to children born thereafter.

2. JUDICIAL SALES—*slight irregularities coupled with gross inadequacy of price will justify relief in equity.* If property has been sold upon execution or at a judicial sale at a grossly inadequate price, slight circumstances indicating unfairness or fraud, either upon the part of the officer, the purchaser or the party to the record benefited by the sale, will furnish sufficient ground for equitable interposition.

3. SAME—*when price is grossly inadequate.* Where the interests of the two defendants to an execution in the property levied upon amount to $3200, a sale of such interests for the sum of $145 is at a grossly inadequate price.

4. SAME—*duty of sheriff to offer land in separate tracts.* Where the interest of the defendant to an execution in an eighty-acre tract is levied upon, it is the duty of the sheriff, before offering the defendant's interest in the entire tract, to offer the property first in twenty-acre tracts, then in forty and again in sixty, if no bids are received; and if such course is not followed, the price is grossly inadequate and there are other irregularities, a court of equity is justified in allowing redemption upon equitable terms.

5. SAME—*return of sheriff—his certificate and deed must be consistent.* If the return of the sheriff upon the execution and the recitals in the certificate of sale are inconsistent with each other as to the manner in which the sale was made, there is an absence of that entire conformity which is required in such muniments of title.

6. SAME—*effect where officer gives no notice of execution.* If there has been gross inadequacy of price, and the officer executing the process has failed to call upon the defendant and demand payment or to give notice of the execution, a court of equity is warranted in finding that there has been an attempt, not simply to obtain payment of the debt, but to secure an unfair advantage.

7. SAME—*plaintiff and his attorney are charged with notice of irregularities.* If the plaintiff in the judgment, or his attorney, becomes the purchaser at the execution sale, he is responsible for and is held to be cognizant of all irregularities and errors, both in the judgment and the proceedings under the execution.

8. HOMESTEAD—*when homestead will be confined to a single tract.* If several forty-acre tracts lie contiguous and the debtor has a dwelling on any given forty-acre tract, which, with the buildings, is of the value of $1000, the law regards such forty as the debtor's homestead, and the other forties are subject to levy and sale.

APPEAL from the Circuit Court of Moultrie county; the Hon. W. G. COCHRAN, Judge, presiding.

This is a bill, filed on February 6, 1901, by the appellant, E. J. Miller, against the appellees, Mary Elizabeth McAlister and William McAlister and others, for the partition of the west half of the south-west quarter of section 12 in township 15, north range 6, east of the third principal meridian, in Moultrie county. Appellant claims in his bill that he is the owner of an undivided interest in the eighty acres in question, as tenant in common with the appellees. Appellees filed an answer to the bill, denying that appellant owned any interest in the premises. The other defendants below also filed answer making the same denial. Replications were filed to the answers. On March 11, 1901, the present appellees, Mary Elizabeth McAlister and William McAlister, defendants below, filed a cross-bill praying that the sheriff's sale and sheriff's deed, under which the appellant claims title, be set aside, and declared to be null and void, and that the cross-complainants be given the right to redeem from said sheriff's sale, by a day to be fixed by the court, upon the payment of the amount found to be due to the appellant upon the judgment, under which the sheriff's sale was made. After a demurrer to the cross-bill was overruled, the appellant answered the cross-bill, denying all irregularities or fraud in the sale under the judgment hereinafter mentioned. A replication was filed to the cross-bill.

The cause was referred to a master, who took testimony and reported his conclusions. Objections were filed to the master's report and overruled, and stood as exceptions thereto. On May 25, 1901, the court rendered

a final decree, overruling the exceptions to the first, fifth and tenth findings made by the master, and sustaining the exceptions to the second, third, fourth, sixth, seventh, eighth, ninth and eleventh findings made by the master, and also finding that the allegations in the cross-bill, relative to irregularities in the sheriff's sale hereinafter referred to, were true, and that the cross-complainants were entitled to relief as prayed in the cross-bill, and ordered that appellees should pay to the appellant the amount, for which their respective interests in the property, as hereinafter stated, were sold, with interest from the day of sale within a certain time, and that, in case of such payment, appellant would not be entitled to a partition, but that, in case of failure to make such payment within said time, appellant would be entitled to a partition as prayed in the original bill.

The present appeal is prosecuted from the decree so entered by the court below. Cross-errors are assigned by the appellees, assigning, as error in the action of the court below, that it sustained the exceptions to the master's report numbered 2, 3, 4, 6, 7, 8 and 9.

The material facts, as shown by the pleadings, proofs, master's report and decree, are substantially as follows: On August 23, 1865, William P. Moore, father of the appellee, Mary E. McAlister, who was the wife of Robert McAlister, conveyed the west half of the south-west quarter of section 12, as above described, to Mary Elizabeth McAlister "and her children born, and to be born * * * and their heirs, etc., forever," which deed was recorded on March 22, 1866. Mary Elizabeth McAlister and her husband, Robert McAlister, had eight children born between May, 1858, and March, 1881. They also had several children who died in infancy, but it is stipulated that none of the children, who so died in infancy, were living in 1865 when the deed to Mrs. McAlister was executed. Only two of her children were living when the deed was executed in 1865, to-wit, the appellee, George

W. McAlister, known as William McAlister, born May 6, 1858, and J. O. McAlister, known as Owen McAlister, born April 29, 1864. The other six of the eight children above referred to were born after the execution of the deed. Soon after its execution, the appellee, Mary Elizabeth McAlister, and her husband, Robert McAlister, took possession of the premises.

On March 16, 1898, W. D. Hoover recovered a judgment in the circuit court of Moultrie county for the sum of $114.35 and costs of suit against the appellees, Mary Elizabeth McAlister and William McAlister. The suit, in which this judgment was rendered, was brought upon a note for $70.00, payable eight months after date to the order of Hoover, and signed by "Wm. McAlister Bro." and "Mary E. McAlister." The judgment was rendered by default, and the appellant, E. J. Miller, was the attorney of Hoover, who brought the suit and obtained the judgment. On March 31, 1898, an execution was issued upon the judgment out of the circuit court of Moultrie county, in which it was rendered, against the appellees, which execution was received by the sheriff of that county on the date of its issue, and was returned on June 28, 1898, no property found. On November 9, 1898, an *alias* execution was issued upon the judgment directed to said sheriff, which *alias* execution was on November 10, 1898, levied upon the interests of appellees in the tract of land above described. The levy and return are as follows: "By virtue of the within and foregoing execution and process, I have levied on the west half (½) of the south-west quarter (¼) section twelve (12), * * * as the property of William McAlister; also the south-west quarter of the south-west quarter of section twelve (12), * * * as the property of Mary Elizabeth McAlister. All situated in the county of Moultrie and State of Illinois." After giving notice by posting and publication, the sheriff, on December 3, 1898, made a sale of the entire interest of William McAlister in the eighty-acre tract

for $75.00, and the entire interest of Mary Elizabeth McAlister in the south half of the eighty-acre tract for $70.00, amounting altogether to $145.00, to appellant, E. J. Miller, the attorney for Hoover, the plaintiff in the judgment. The sheriff made written return of the execution as satisfied in full by sale on December 3, 1898, and executed and delivered to appellant, the purchaser at the sale, a certificate of sale dated December 3, 1898. No redemption was made from the sale, and on March 10, 1900, the sheriff executed a sheriff's deed to the appellant, E. J. Miller, which deed was recorded on March 10, 1900. The appellant claims his interest in the premises in question under the sheriff's deed so executed as aforesaid. The cross-bill seeks to set aside said sheriff's deed for certain alleged irregularities, and unfair or fraudulent conduct on the part of appellant, more particularly stated and referred to in the opinion.

JOHN R. EDEN, and J. K. MARTIN, for appellant.

WHITAKER & THOMPSON, for appellees.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

The main question, involved in this case, is the validity of the sheriff's deed executed to the appellant. If that deed is valid, the appellant acquired thereby the undivided interests in the property in question, belonging to the appellees, which were sold at the sheriff's sale, and, as the owner of such undivided interests, is entitled to partition, as prayed in the original bill. If, however, the sheriff's deed is invalid, then the prayer of the cross-bill, filed by the appellees in the court below, permitting a redemption from the sheriff's sale upon the payment by the appellees of the amount of such sale and interest thereon, and setting aside and canceling the sheriff's deed in case of such payment, was properly granted by the court below.

*First*—The court below found in its decree that Mary E. McAlister, William McAlister and Owen McAlister took the entire estate in the land in question from William P. Moore, the father of Mrs. McAlister, under the deed executed by him on August 23, 1865. We are of the opinion that this finding of the court was correct. The deed in question conveyed the eighty acres here in controversy to Mary E. McAlister "and her children born and to be born." The only children in existence when the deed was made on August 23, 1865, were the appellee, William McAlister, and his brother, Owen McAlister, and, therefore, these were the only children of Mary E. McAlister, who took title under the deed. The children, born after the date of the deed, took nothing. Hence, Mary Elizabeth McAlister and her two sons, William McAlister and Owen McAlister, became the owners by virtue of the deed, each of an undivided one-third of the premises.

A grantee must be *in esse* at the time a deed is executed; otherwise no title will pass by the deed. An unborn child has no such existence as will enable it to take a present grant of lands by deed. In *Morris* v. *Caudle*, 178 Ill. 9, we held that a deed to a grantee *in esse* and his unborn brothers and sisters, which is delivered and recorded after the birth and death of a sister, is valid as to the grantee *in esse* at the execution of the deed, but creates no rights in the deceased sister or those claiming under her; and that, while an unborn child may inherit property by descent or take by devise upon coming into being, yet it cannot take a present grant of lands by deed, although *in ventre sa mere* when the deed was executed. Also, in *Faloon* v. *Simshauser*, 130 Ill. 649, we held that, where a deed of land is made to a woman by name and "her children," she and her children, living at the time of the execution of the deed, will take as tenants in common, but a child born thereafter will take nothing; and that, in the case of a grant of an immediate estate in pos-

session, the grantee must be *in esse*, and a deed of that kind may be avoided by showing that the grantee came into being subsequently to the delivery of the deed.

*Second*—The ground, upon which the appellees claim that the sheriff's deed to the appellant should be set aside, is that, at the sheriff's sale, the interests of the appellees in the property were sold for a grossly inadequate price, and that, in connection with such inadequacy of price, there were irregularities, which will justify a court of equity in setting aside the sheriff's deed and allowing a redemption from the sheriff's sale. One of the irregularities insisted upon is, that the land levied upon was sold *en masse*, and that, although each subdivision of the land may have been offered separately, yet that, when no bids were made upon the tracts so separately offered, the sheriff should have added two of them together, and then three of them together, and so on, until all the tracts had been thus offered; and that, inasmuch as the latter course was not pursued, it was not proper to offer a sale of the property *en masse*. Another of the irregularities insisted upon is, that no demand was ever made upon the defendants in the execution for the payment of the same, and that they were never notified of the issuance of the execution under which the sale was made, or that any sale was or was to be made. Another of the irregularities insisted upon is, that the sheriff failed to set off to Mary E. McAlister a homestead in the premises sold, it being claimed that she had a homestead therein.

This court has held in a number of cases that, while inadequacy of price alone may not justify a court of chancery in setting aside a judicial sale, yet that equity will seize hold of serious irregularities in the mode of sale, or of any circumstances of unfairness towards the debtor, in order to grant relief in a case where such gross inadequacy is shown to exist. Where property has been sold upon execution, or at a judicial sale, at a

grossly inadequate price, even slight circumstances, indicating unfairness or fraud, either upon the part of the officer, the purchaser, or the party to the record benefited by the sale, will furnish sufficient ground for equitable interposition. Where the inadequacy is gross, the purchaser can retain his advantage only by showing that he acquired title by proceedings free from fraud or irregularity. (*Parker* v. *Shannon*, 137 Ill. 376, and cases cited on p. 372; *Davis* v. *Chicago Dock Co.* 129 id. 180; *Hobson* v. *McCambridge*, 130 id. 367). It is true that, where the judgment debtor has notice of the sale, he should present his application to have it set aside before the right of redemption has expired in the court from which the execution is issued; but the rule above stated is in nowise weakened by the fact, that there may be a waiver of the right to set aside the sale after the expiration of the time for redemption, especially where such a length of time has elapsed since the making of the sale as to amount to *laches*, and where title has passed from the grantee in the sheriff's deed into the hands of a *bona fide* purchaser. (*Clark* v. *Glos*, 180 Ill. 556).

In the case at bar, the proof shows clearly that the interests of the appellees in the eighty-acre tract in question were sold for a grossly inadequate price. The land, according to the testimony of the witnesses, was worth $80.00 per acre, or $6400.00 for the whole tract. The undivided one-third interest of William McAlister in the tract was, therefore, worth $2133.33, and yet it was sold for only $75.00. The undivided one-third interest of Mary Elizabeth McAlister in the south forty acres of the tract was worth $1066.66, and was sold for only $70.00. The combined interests of the two appellees in the eighty-acre tract were worth $3200.00, and were sold for the small sum of $145.00 to the appellant. Where a tract of land worth $1000.00 is sold to satisfy an execution for less than $30.00, the tract being susceptible of division, there is gross inadequacy of price in the sale.

(*Stewart* v. *Croes*, 5 Gilm. 442). Where property of the value of $1500.00 at the time of the sale is sold *en masse* for $71.65 without having been offered in smaller tracts, the sale is for a grossly inadequate price. (*Smith* v. *Huntoon*, 134 Ill. 24). Where lots of the value of $2000.00 above all encumbrances are sold under execution for only $60.00, the price is grossly inadequate. (*Lurton* v. *Rodgers*, 139 Ill. 554).

*Third*—In his return upon the execution the sheriff states, that he offered the west half of the south-west quarter, etc., being the whole of the eighty-acre tract, in separate tracts of twenty acres each, and received no bids, and that he then offered the entire interest of William McAlister in and to the whole eighty acres, and received a bid of $75.00. Undoubtedly, it was the duty of the sheriff, after having offered the property for sale in separate tracts of twenty acres each, to have then offered it for sale in tracts of forty and sixty acres respectively before selling the whole tract of eighty acres. "It is the established construction of this statute, (referring to section 12 of chapter 77 of the Revised Statutes), that, where several adjoining tracts of land are levied upon, it is the duty of the sheriff to offer each subdivision of the lands separately, and, if no bid be made upon the tracts when so offered, to add two of them together, and offer them, and so on, until all the tracts have been thus offered; and if no bid be made, he may then offer and sell the tracts *en masse* for a reasonable price." (*Cohen* v. *Menard*, 136 Ill. 130, and cases referred to on p. 133; *Phelps* v. *Conover*, 25 id. 272; *Morris* v. *Robey*, 73 id. 462; *Berry* v. *Lovi*, 107 id. 612.) If the statement in the return of the sheriff be true, then the rule, announced in the foregoing quotation from the case of *Cohen* v. *Menard*, *supra*, was not observed in making the sale. The evidence of the sheriff and his deputy tends to confirm the correctness of the return. In *Cohen* v. *Menard*, *supra*, we said (p. 134): "It is the duty of the officer, as said in the case last cited,

if he sell *en masse* to make full return of all the facts. From the return thus made, in this case, it appears that the officers did not offer even the adjoining tracts together before offering the whole together. The return is unequivocal that he offered the tracts separately, and, receiving no bids, he then offered all together. The debtor had the right, under the statute, to have no more of his property sold than was necessary to satisfy the debt and costs. The adjoining tracts were shown to have been worth substantially three times as much as could have been demanded upon the execution, and, presumably, would have sold, if offered, for enough to have satisfied the same." So, in the case at bar, any two of the twenty-acre tracts, amounting to forty acres, were worth $3200.00, and the undivided one-third interest of William McAlister in such tract of forty acres was worth over $1000.00. This amount was worth more than enough to have paid the judgment. The certificate of sale is inconsistent with the return of the sheriff in relation to this matter. The certificate of sale recites, that the property was offered, not only in separate tracts of twenty acres each, but in tracts of forty and sixty acres, before the whole tract of eighty acres was offered and sold. The testimony shows, however, that after the sale the certificate of sale was drawn by the appellant, or was drawn by the sheriff under the direction of the appellant, and from notes, or a form, furnished by the appellant.

It is to be noted, that the appellant in this case was the attorney of the judgment creditor, and was himself the purchaser of the property. No money was paid at the sheriff's sale, except the costs and the commissions of the sheriff. Appellant, as attorney, receipted for the amount of the judgment and interest to the sheriff. He did not buy the land for his client, Hoover, but bought it for himself. He says that he wrote to his client, Hoover, stating that he would bid the land in for him, but that Hoover told him, that he did not desire to buy the land,

and to buy it himself.    It thus appears that the plaintiff in the execution did not care to take the land.    Appellant also swears, that he did not pay the amount of the judgment to Hoover, and has not yet paid it, but that he gave Hoover his obligation for the amount of money due him, and that that obligation still remained unpaid at the time he gave his testimony in this case.    The case presented, then, is one where the land was not purchased by the judgment creditor, or by the attorney of the judgment creditor for the judgment creditor, but it was bought by the attorney for himself, and upon a credit. Appellant caused the *alias* execution to be issued on November 9, and the levy to be made on the next day, and the sale was made within twenty-three days after the levy.    Appellant says, that he knew that the land was worth $80.00 an acre, and that he had seen the record of the deed from Moore to Mrs. McAlister and her children. He was informed, before the issuance of the *alias* execution, that William McAlister lived at Arthur in Moultrie county, and could have easily ascertained from him the number of Mrs. McAlister's children, and who of them were living at the time of the execution of the deed by Moore.    He says he did make inquiry as to these children, but he made no inquiry of William McAlister upon that subject, nor gave him any notice.    He also knew, before the issuance of the *alias* execution, that Mrs. McAlister was sick at her home upon this land, and, on account of sickness, had not been away from home for more than two years.

Appellant refers to the case of *Holmes* v. *Shaver*, 78 Ill. 578, as justifying his purchase of this land without the payment of the amount of the judgment, but by giving an obligation to the judgment creditor, his client, to pay the judgment at some future time.    In *Holmes* v. *Shaver*, *supra*, land was purchased at an execution sale, and notes were given for the amount of the bid; and a suit was afterwards brought against the maker of the notes.    In

that case, a court of equity refused to enjoin the col-
lection of the notes; but the question there was simply
between the parties to the notes, and not between the
judgment debtor and the purchaser at the sale. It was
there held, that the maxim, *caveat emptor*, applies to the
purchaser at a judicial sale, and that the consideration
of the notes had not failed merely because the purchaser
did not get a good title. The facts in that case, how-
ever, when carefully examined, will afford no justifica-
tion for a purchase by the attorney of a judgment creditor
under the circumstances here narrated. The conduct of
the attorney shows not so much a desire to collect the
judgment of his client, as to make a speculation by get-
ting property of large value for a very small sum of
money. (*Dickerman* v. *Burgess*, 20 Ill. 267; *Davis* v. *Chicago
Dock Co.* 129 id. 180).

Inasmuch as, here, the return of the sheriff upon the
execution and the recitals in the certificate of sale are
inconsistent with each other as to the manner, in which
the sale was made, there is an absence of that entire con-
formity which is required in such muniments of title.
"There should be entire conformity in the return of the
sheriff, his certificate and deed; and, if they do not pos-
sess it, they will be held invalid." (*Dickerman* v. *Burgess,
supra; Johnson* v. *Adleman*, 35 Ill. 265).

The evidence sustains the correctness of the state-
ment in the return. This being so, the sale of the land
in the manner stated in the return is an irregularity
which, taken in connection with the gross inadequacy
of the price and the other irregularities heretofore and
hereinafter mentioned, authorized the court below to al-
low a redemption upon the terms stated. Where several
tracts of land are levied upon under execution and sold
together at a grossly inadequate price, and the sheriff's
return shows that he offered each tract separately, but,
receiving no bids, offered them all together, the sale will
be set aside by bill in chancery for such gross inadequacy

of price in connection with the irregularity in not offering the tracts by twos and threes, and so on, upon condition of the payment to the purchaser of a sum sufficient to redeem from the sale. (*Cohen* v. *Menard, supra; Berry* v. *Lovi, supra; Parker* v. *Shannon, supra*).

*Fourth*—Another irregularity insisted upon by the appellees is, that no demand was made upon the appellees for the payment of the execution, nor was any notice given to them of the issuance of the execution. It is the duty of the sheriff to notify the defendant in execution before making the levy, and to apply to the defendant for the payment of the execution. In *Pitts* v. *Magie*, 24 Ill. 610, we said: "Indeed, it is the first duty of an officer, having an execution against a party, to apply to him personally for payment, wherever that is practicable, and the officer should be held responsible to the party aggrieved, for a neglect of this duty, wherever special damages result from it." Where there is gross inadequacy of price, and the officer executing the process fails to call upon the defendant and demand payment, or in any manner to serve his execution, or to give notice of the execution to the defendant, the court is warranted in finding that there has been an attempt, not simply to obtain the payment of the debt, but to secure an unfair advantage by obtaining property for a sum largely less than its value. (*Hobson* v. *McCambridge, supra; Bullen* v. *Dawson*, 139 Ill. 633). We do not hold, that the failure of the officer to make the demand is sufficient, of itself, in a case where the levy is upon real estate, to avoid the sale. But, here, it is not shown that there was any necessity for a levy upon so much property as was levied upon, or for making the sale in the shortest possible time, or for not pursuing the ordinary course and making demand before making the levy. It appears here that, in making the levy and sale, the officer acted under the direction of plaintiff's attorney, and that, by reason of the instructions of the plaintiff's attorney, he failed to notify the

appellees, or make any demand on them. The attorney was careful to direct the levy upon all the interest of William McAlister in the whole eighty acres, and upon all the interest of Mrs. McAlister in the south forty acres, and to have the same sold as early as possible. All these circumstances make it clear that the payment of the execution was not the only object sought by the attorney, and authorized a court of equity to set aside the sale and allow a redemption. It is a rule in equity, that a party to a suit, purchasing property sold under an execution, and his attorney who conducts the proceedings, are chargeable with notice of all irregularities attending the sale. Where the plaintiff in the judgment, or his attorney, becomes the purchaser at the execution sale, he is responsible for, and is supposed to be cognizant of, all irregularities and errors both in the judgment and in the proceedings under the execution. (*Dickerman* v. *Burgess*, *supra; McLagan* v. *Brown*, 11 Ill. 519; *Smith* v. *Huntoon*, 134 id. 24). Nor does it make any difference, that the interest levied upon is an undivided interest, so far as the obligation to offer it for sale in separate parcels is concerned. In *Smith* v. *Huntoon*, *supra*, the interest levied upon was a one-fifth interest in a tract of land, and yet it was there held that a sale of the land *en masse* on execution when it was susceptible of division, and a smaller portion would, if offered, have satisfied the debt, was irregular.

*Fifth*—It is urged, that there was an irregularity in the sale by reason of the fact that there was a failure to set off an alleged homestead in Mrs. McAlister in accordance with the provisions of the statute upon that subject. We do not think, that there was any irregularity in the action of the sheriff in this regard. The evidence tends to show, that Mrs. McAlister lived upon the north forty acres of the eighty-acre tract, and that such improvements, as she had, were upon the north forty acres, and not upon the south forty acres. Her interest in the north forty acres was not levied upon, but only her interest

in the south forty acres. The evidence is not clear upon the subject of what constituted her homestead. She owned an undivided one-third part of the north forty acres; and an undivided interest, accompanied by exclusive possession, will support the homestead right. That is to say, where there is a parol partition of lands between tenants in common, which is followed by a several possession, each tenant in common will have the rights and incidents of an exclusive possession; and, in such case, while the legal title might not be considered as having passed unless after a possession sufficiently long to justify the presumption of a deed, yet each co-tenant will stand seized of the legal title of one-half of his allotment, and the equitable title to the other half, and can compel from his co-tenant a conveyance according to the terms of the partition. The homestead law protects a possession held under an equitable as well as a legal title. (*Tomlin* v. *Hilyard*, 43 Ill. 300; *Brokaw* v. *Ogle*, 170 id. 115).

In the case at bar, it does not appear whether there was a parol partition between Mrs. McAlister and her two sons, William and Owen, or not; nor does it appear that she claimed any homestead interest in the one-third of the north forty acres owned by her son, William, or in any other portion thereof than the one-third interest owned by herself. Her one-third interest in the north forty acres was worth more than $1000.00, and the improvements thereon were worth upwards of $500.00, so that her interest in the north forty acres exceeded $1000.00, in value. Inasmuch as the north forty acres so occupied exceeded the value of $1000.00, the south forty could be levied upon and sold without violation of her right of exemption; and it was only her interest in the south forty acres which was sold. Courts will take notice of the government surveys of lands, and where a debtor has a dwelling upon any forty-acre tract which, with the buildings thereon, clearly exceeds the value of $1000.00,

the law regards such forty acres as the farm or lot of land occupied as a residence, and the exemption will be confined to such tract, and the sheriff may levy on and sell any adjacent tract without the intervention of a jury. (*Gardner* v. *Eberhart*, 82 Ill. 316; *Hill* v. *Bacon*, 43 id. 477; *Linton* v. *Quimby*, 57 id. 271; *Aldrich* v. *Thurston*, 71 id. 324; *Raber* v. *Gund*, 110 id. 581). In the case at bar, the exemption of Mrs. McAlister, if she had a homestead at all, is confined to the north forty acres of the tract, and the sheriff had a right to proceed to levy upon and sell the south forty acres without the intervention of a jury, and the sale was valid. Where several forty-acre tracts lie contiguous, and the debtor has a dwelling on any given forty-acre tract, which, with the buildings thereon, is of the value of more than $1000.00, in such case the law regards the forty acres, on which the debtor's residence is situated, as the farm or lot of ground occupied by him as a residence.

The proof is clear in this case that the appellees had no notice of the issuance of the execution which was levied upon their property, and knew nothing about the sale of the same by the sheriff, until the present partition suit was begun in February, 1901. William McAlister, after the service of summons upon him in the present partition suit, made an offer to the appellant to pay him the whole amount of the judgment, under which the sale was made, and interest, and in addition thereto, $25.00 for his trouble, but this offer was declined. Before the issuance of the execution of November 9, 1898, appellant wrote a letter to Mrs. McAlister. This letter is not in evidence, but the reply to it, written by Mrs. McAlister on September 29, 1898, is in evidence. In this reply Mrs. McAlister claimed her homestead, stated the fact of her sickness, and inability to leave home, and referred the appellant to her sons for information in regard to the land, telling him therein that her son, William, lived at Arthur in Moultrie county, and that he could write to

him about the land. Notwithstanding this letter, appellant never communicated with William McAlister, and gained his information about the land and the interests of Mrs. McAlister and her children therein from other and outside sources. These facts, and the other circumstances herein narrated, clearly indicate a desire and intention on the part of appellant to conceal the fact of the sale from the judgment debtors.

In view of the grossly inadequate price, for which the property was sold, taken in connection with the irregularities hereinabove referred to, we are of the opinion that the decree of the court below was correct.

Accordingly, the decree of the circuit court of Moultrie county is affirmed.                                    *Decree affirmed.*