(No. 20319.—

FLORENCE L. BARNES, Appellee, *vs.* ALBERT R. FREED,
Appellant.

*Opinion filed December 18, 1930.*

HAROLD O. MULKS, for appellant.

FRANCIS J. SULLIVAN, and HENRY P. HEIZER, for appellee.

Per CURIAM: Florence L. Barnes filed a bill in the superior court of Cook county against Albert R. Freed and Abe Silverberg to restrain the prosecution by Freed of an action of forcible detainer of certain real estate in the city of Chicago, to cancel a bailiff's deed conveying the premises to Abe Silverberg and a deed by Silverberg conveying them to Freed, upon payment by her of the amount to be found due, and to require Freed to convey them to the complainant. Freed alone answered the bill, and after replication filed the cause was referred to a master, who heard the evidence and reported it with his conclusion recommending a decree granting the relief prayed for. The court sustained certain exceptions to the master's findings and overruled others, and entered a decree canceling the deeds upon payment by the complainant to Freed of $1374.45, and Freed appealed.

The bill alleged and the evidence showed that the appellee had been the owner of the premises, which are known as 7010 and 7012 Normal avenue, since June 10, 1925. They were encumbered by a trust deed securing five notes amounting in the aggregate to $4000 principal, bearing six per cent interest. Three of the notes for $250 each had been paid. The premises fronted 50 feet on the west side of Normal avenue, having a depth of 125 feet to an alley.

The north half of the premises had on it a ten-room, two-story residence. The south half was vacant, except that upon the back part of the premises were a three-car stucco garage and a two-car stucco garage. The value of the land was $300 a front foot and of the buildings $8000. On October 29, 1926, Frank Herst recovered a judgment by confession in the municipal court of Chicago against Anne J. Madden (who was the complainant's mother) and the complainant for $852.10 and costs upon a promissory note, the consideration for which was the purchase price of an automobile bought by Anne J. Madden, the complainant being a surety, only. On November 1, 1926, an execution was issued and the bailiff endorsed thereon that he had on November 18 demanded of the defendant, Anne J. Madden, money or property to satisfy the writ and delivered a copy of it to her with his endorsement thereon, as the bill alleged, "notifying him that he must file a schedule of his property within ten days from date of said demand in order to claim exemption, and he failed to satisfy the execution or any part of it." On January 5, 1927, the bailiff endorsed a levy of the execution upon "all the right, title and interest of the within named Florence L. Barnes" in and to the real estate in question. On January 7, 1927, he caused a certificate of the levy to be recorded and on February 7 advertised in the *Chicago Daily Law Bulletin* a public sale of all the right, title and interest of the complainant in the premises at ten o'clock A. M., March 2, 1927, at the west entrance on LaSalle street of the city hall, in Chicago. The bailiff, at the time and place mentioned in the advertisement, sold the premises for $917.59 to Julius Adler, delivered a certificate of sale to him and caused a duplicate certificate to be recorded. On June 5, 1928, no redemption having been made, the bailiff conveyed the premises to Abe Silverberg, assignee of Adler, and by warranty deed dated June 11 Silverberg conveyed to the defendant Freed, who on July 26, 1928, brought the action

of forcible detainer in the municipal court for possession of the real estate. The complainant has no defense to that suit and unless it is restrained it will result in her dispossession. It was further alleged in the bill that no demand was made upon the complainant by the bailiff at any time for money or property to satisfy the execution and no copy of it was ever delivered to her, and that neither Herst nor any other person gave her any notice of the judgment, the levy or the sale, but for the purpose of gaining an unfair advantage and obtaining the premises at a grossly inadequate price he concealed from her the fact of the judgment, levy and sale and she had no knowledge of them until the bringing of the forcible detainer suit. The bill specifically alleged further facts which are relied on as constituting irregularities in making the sale sufficient to justify the granting of the relief sought: The bailiff did not offer the premises in separate tracts though the amount of the judgment could have been realized from a sale of the south twenty-five feet of the premises; the notices of sale were not sufficient to inform the public as to the place of sale and were not posted in three of the most public places in the county; that the bailiff levied on and sold the right, title and interest of the complainant in the real estate instead of the real estate itself.

From February, 1925, to April, 1927, the appellee lived with her mother and her mother's husband at 7823 Bennett avenue. She moved in April, 1927, to the premises in question. Anne J. Madden, her mother, bought the automobile for which she gave the note signed by the appellee as surety, on April 7, 1926. The appellee testified that she heard nothing about the note after its execution, made no inquiry, and forgot all about it until she was served with a summons in the forcible detainer suit; that in 1926 any letters addressed to her at 7010-12 Normal avenue would have reached her at 7823 Bennett avenue, and that her mother and step-father received the mail also. She testified

that she did not receive a registered letter dated March 12, 1928, addressed to her at 7010 Normal avenue the receipt for which bore her name and that of her mother. It was shown that four letters were mailed to her at 7010 Normal avenue by the attorneys for the plaintiff in the judgment. They were not returned though the return address was on the envelopes. They were dated August 26, October 21 and October 28, 1926, and March 12, 1928. She testified that she received none of them, though in March, 1928, she was living at 7010 Normal avenue. The first letter informed her that Mrs. Madden was in arrears in·her payments for the automobile and unless it were surrendered in five days judgment would be taken on the note. The second informed her that the writers had been obliged to re-possess the car and contained a notice of the time and place when and where it would be sold, its proceeds to apply upon payment of the note, and that if not sufficient they would look to her for payment of the deficiency. The third enclosed a copy of the report of mortgagee's sale of the automobile, and the fourth, written after the expiration of the twelve months' period within which the appellee could have redeemed from the sale of the real estate, was as follows: "Will you kindly get in touch with us at your very earliest convenience relative to the bailiff's deed to your property." The master found that no demand was made on the complainant to satisfy the writ at any time, and that she had no notice of the judgment, execution, levy or the advertisement of the sale until June or July, 1928, when Freed brought the forcible detainer suit against her for possession of the premises. The court, in ruling on the appellant's exception to this finding, found the facts which have been stated as to the sending of the letters, and concluded by finding that "otherwise than as above found said Florence L. Barnes had no notice of the issuance of said execution of November 1, 1926, or the levy thereunder or of the sale of her real estate as set out in her bill of com-

plaint." The return of the sheriff on the execution shows that it was served on Anne J. Madden but not on appellee, though it also shows the levy was made on appellee's property and a sale thereof had.

The grounds set out in the bill for equitable interposition are, that appellee had no notice of the execution and sale of her property; that by the irregularities herein mentioned the property was sold at judgment sale for a grossly inadequate consideration, resulting in unfairness to her, and that she is willing, ready and able to pay the judgment, costs and interest and had tendered same to appellant.

Considering the first objection, that no service of the execution upon appellee was had nor demand made upon her for money or property with which to pay it, it appears that while she was living with her mother she was employed away from the house and was, absent during the day. Demand was made on Anne J. Madden, her mother, who was given a copy of the execution. A copy was not left for appellee with Mrs. Madden as one of appellee's household over ten years of age, and the service was not service of execution on appellee.

In this case property worth approximately $20,000 was sold for $917.59. The consideration was grossly inadequate. It has long been the rule in this State that while gross inadequacy of price is not of itself sufficient to set aside a judicial sale, yet such inadequacy, coupled even with slight circumstances indicating unfairness or fraud, either upon the part of the officer, the purchaser or the party to the record benefited by the sale, will furnish sufficient ground for equitable intervention. Under such circumstances the purchaser at a judgment sale can retain his advantage only by showing that he acquired his title by proceedings free from fraud or irregularity. (*Block* v. *Hooper,* 318 Ill. 182; *Miller* v. *McAlister,* 197 id. 72; *Parker* v. *Shannon,* 137 id. 376; *Hobson* v. *McCambridge,* 130 id. 367; *Davis, Cory & Co.* v. *Chicago Dock Co.* 129 id. 180.)

If the inadequacy of the sale price can in any way be traced to, connected with or shown to result from any mistake, accident, surprise, misconduct, fraud or irregularity the sale will generally be vacated. All facts which tend to show that any unfair advantage was procured by the purchaser or person benefited by the sale are competent to be considered and may amount to evidence of fraud. (*Block* v. *Hooper, supra; Logar* v. *O'Brien,* 339 Ill. 629; *Magnes* v. *Tobias,* 337 id. 605; *Davis, Cory & Co.* v. *Chicago Dock Co. supra; Morris* v. *Robey,* 73 Ill. 462; Freeman on Executions, sec. 309.) The conscience of the chancellor will be quickened by proof of circumstances indicating that an unfair advantage was sought or procured and will seize upon the gross inadequacy as additional and strong evidence of fraud and by decree prevent the purchaser from reaping unconscionable advantage, and where there is gross inadequacy of price and the officer executing the process fails to call upon defendant and demand payment or in any manner serve his execution or give notice of the execution to the defendant, the court is warranted in finding that there has been an attempt not simply to obtain payment of the debt but to secure an unfair advantage by obtaining property for a sum much less than its value. *Miller* v. *McAlister, supra; Bullen* v. *Dawson,* 139 Ill. 633; *Hobson* v. *McCambridge, supra.*

Counsel for appellant argues that the statute relating to judgments, decrees and executions does not require that the sheriff give notice of an execution or make demand, and cites in support of that contention *Gardner* v. *Eberhart,* 82 Ill. 316. That was an action in forcible detainer, and it was argued that since the sheriff had sold the debtor's property without notifying him, the sale was illegal. It was held that notice would have done the debtor no good and the sheriff was not in law required to give notice. In *Rock* v. *Haas,* 110 Ill. 528, (a case in equity,) it was held to be the duty of the sheriff to make demand by service

of the execution before levy, and such has been the rule generally adopted in equity cases. As early as *Bingham* v. *Maxey,* 15 Ill. 290, it was held to be the duty of the sheriff, before he proceeds to a levy under an execution, whenever practicable, to give notice to the defendant. In *Pitts* v. *Magie,* 24 Ill. 610, it was said: "Indeed, it is the first duty of an officer having an execution against a party to apply to him personally for payment wherever that is practicable." It was likewise so held in *Hamilton* v. *Quimby,* 46 Ill. 90, *People* v. *Palmer,* 46 id. 398, *Davis, Cory & Co.* v. *Chicago Dock Co. supra, Logar* v. *O'Brien, supra,* and *Magnes* v. *Tobias, supra.* In the latter case it was held that service of an execution on one of the debtors, only, was an irregularity which, considered with the gross inadequacy of price, afforded ground for intervention. While the statute concerning judgments, decrees and executions does not specifically require that an execution be served on the defendant, yet the statute on exemptions provides that a debtor may, within ten days after a copy of execution has been served upon him in like manner as summons are served in chancery, file a schedule of his personal property. (Cahill's Stat. 1929, p. 1313.) We are of the opinion that it is the intent of the statute concerning judgments, that, wherever practicable, service of the execution on the debtor should be had. Even though it were conceded· that under the statute the sheriff was not bound to serve the execution on appellee, this court has uniformly held that in equity his failure so to do is an irregularity which, taken with gross inadequacy of price, may be sufficient to justify equitable relief.

Nor does the fact that appellant in this case was not the purchaser at the sale but is a third party bar equitable relief. He was charged with notice of the proceedings by which his grantor obtained title. Furthermore, appellee was in continuous possession from the time of the sale until the filing of the bill herein, and appellant was charged with

notice of her rights. (*Logar* v. *O'Brien, supra; Wilkinson* v. *Cox,* 228 Ill. 306.) Such a purchaser is not injured by permitting redemption, for the reason that he receives the amount of the judgment and costs, together with interest at the legal rate. More than this is an advantage which equity will not permit him to retain if it arises through irregularity or unfairness in the proceedings. The purpose of notice of service of an execution is to give the debtor a chance to pay or make claim of exemption before further proceedings are had. Appellee in this case was able to pay, and tendered the amount of the judgment, interest and all costs before bringing this action. It is but equitable that she be given an opportunity to redeem.

Counsel argues that since the chancellor did not sustain the master's finding that appellee did not know of the judgment against her or the sale of her property, and since she has not assigned cross-errors on that finding, the question of the sufficiency of the service of execution is not before this court. As we have seen, the court found that otherwise than by the letters mailed to appellee, none of which mentioned an execution, appellee had no notice of the issuance of execution on November 1, 1926, the levy thereunder, nor the sale of her real estate set out in her bill of complaint. The only letter mailed to her address touching the question of the sale of her property was that of March 12, 1928, of attorneys for plaintiff in the judgment, requesting her to get in touch with them relative to the bailiff's deed to her property. This was after the sale of the property and her right of redemption had expired. She testified that she did not see the letter. The return of the sheriff on the execution shows plainly that it was not served upon her. The decree in this case afforded the relief granted and we are of the opinion that that decree was right. It might well be that failure to serve the execution on appellee deprived her of the opportunity to pay the judgment and save her property. That failure resulted in an inequi-

table· and unfair advantage to the purchaser of the certificate of sale and to appellant which the latter should not be allowed to retain. This being so, it becomes unnecessary to consider other alleged irregularities in the levy and sale. The decree was right and will be affirmed.

*Decree affirmed.*