Francis M. Allen, Appellee, v. Melvin L. Straus, et al., Defendants.
Appeal of Melvin L. Straus et al., Appellants.

Gen. No. 38,358.

Opinion filed April 22, 1936.

GOTTLIEB & SCHWARTZ and SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, all of Chicago, for appellants; I. E. FERGUSON, of Chicago, of counsel.

SHULMAN, SHULMAN & ABRAMS, of Chicago, for appellee; MEYER ABRAMS, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from a decree entered in the superior court, finding there is due, and that the complainant recover of and from the defendants, Melvin L. Straus, Charles C. Irwin, Frederick W. Straus, J. C. Wright, Robert E. Straus and V. C. Scully, the sum of $3,849.42, together with the amount of money which is in possession of Melvin L. Straus as trustee, and that the said Melvin L. Straus as trustee be and he is hereby directed "to pay over said sum to the complainant exclusive of the amount of judgment heretofore entered against him and the other defendants for the balance, and that execution issue therefor." This decretal order leaves the amount found due uncertain.

The bill is filed by the plaintiff in this case, as the owner of $4,000 in bonds out of a total of $1,600,000

secured by a first mortgage on the Mayfair Hotel, St. Louis, Missouri. The bill was filed on behalf of the plaintiff and all other bondholders similarly situated who desired to come in and become parties to the bill and thereby avoid a multiplicity of suits. None other than the plaintiff appeared as party plaintiffs. Plaintiff claims that the defendants defrauded him of the true value of his bonds by causing a foreclosure sale of the mortgaged property, by an order of the circuit court of the City of St. Louis, Missouri, at an inadequate price.

Among the charges made by the plaintiff in its bill are the following:

"Plaintiff further shows that the foregoing sale was not bona fide, was made for the purpose of cheating and defrauding the bondholders and in order to enable them to carry out the inequitable plan, by collusion of the parties and their attorneys; that the trustee whose duty it was to protect all bondholders equally wholly failed to make any effort to find purchasers at the sale but conspired with the bondholders committee to acquire the property for them at its lowest bid; that because of the arrangements made with the mortgagor, the mortgagor or the parties interested in it were prevented from making any bid, and because of this the plaintiff and other non-depositing bondholders were deprived of the value of their securities by the trustee and his committee; and prior to the entry of the decree certain bondholders had requested the trustee to insert a clause fixing a minimum price at which the property could be sold, but the trustee objected to such a provision, and that this was done in furtherance of the scheme to permit the committee to acquire the property at any price it would fix and to acquire the property at a price which was grossly inadequate and which was a fraud upon the plaintiff and other bondholders; that under the laws of the State of Missouri

the purchaser at the foreclosure sale receives a deed of conveyance vesting him with the full title of the premises and there was, therefore, no reason for the consideration paid to the mortgagor as it appears from the said plan, but that the only object was to prevent competitive bidding and to aid the trustee and the committee to carry out the plan.

. . . . .

"That as a result of the foregoing scheme to cheat and defraud the bondholders the trustee and the committee have greatly benefited in receiving compensation for their services and in managing and operating the premises, the exact amount of which is unknown to the plaintiff; that while the trustee was in possession he received large sums of money as found by the said decree entered February 4, 1932, and that subsequent to said decree additional funds were received by him which belonged to plaintiff and the other bondholders, and plaintiff prays that the trustee and the committee may account for all moneys received by them and disbursed and return any funds which were wrongfully diverted, and because of their acts and doings they should not be allowed to retain the spoils and benefits of their plan and should return for the benefit of the bond owners all profits received by them upon a true accounting to be had in this cause."

The bill of complaint then asks that the trustee and the members of the alleged bondholders protective committee and the depositary who participated in this fraudulent enterprise, as the result of which the bondholders were cheated and defrauded of their securities, should be held jointly and severally responsible in damages to *plaintiff and to the other* bond owners for the loss and damage thereby caused and after a true and accurate accounting to be had, and after application of the funds in their possession in the reduction of the amounts due to plaintiff and the other bond

owners similarly situated, a money decree be entered for the balance, jointly and severally in favor of plaintiff and for the use and benefit of all other bond owners who were thereby defrauded and who desire to join in this proceeding and to contribute to the expense thereof.

The charges above enumerated are serious and, if proven, would doubtless entitle the plaintiff to some relief, but a diligent search of the record fails to show any serious attempt to prove these charges.

The bill of complaint alleges and we think the proof fully shows that on July 1, 1924, the Mayfair Investment Company, a Missouri corporation, executed bonds aggregating $1,600,000 secured by a trust deed to Melvin L. Straus, as trustee, and William R. Orthwein of St. Louis, as cotrustee; that this bond issue was sold to the public by S. W. Straus & Co., and that the plaintiff purchased $4,000 of said bonds and is now the legal holder and owner thereof; that Melvin L. Straus was in 1924 a director and vice president of S. W. Straus & Co.; that interest on the bonds was paid plaintiff from time to time until July 1, 1931; that on or about June 24, 1931, he received a letter from S. W. Straus & Co., stating that the income from the property was sufficient to pay the interest which then matured, but that there was no money available to pay the principal then due; that the trustees had taken possession of the property for the benefit of the bondholders and that a committee had been organized to protect the bondholders, consisting of Charles C. Irwin, Frederick W. Straus, J. C. Wright, Robert E. Straus and N. H. Oglesbee, all officers of S. W. Straus & Co., and that the committee would serve without compensation; that many of the bondholders believed in the good faith of the trustee, "house" (which means Straus & Co. who issued the bonds) and committee (which means the so-called Protective Committee) and deposited

their bonds with the Straus National Bank and Trust Company, as depositary of the same and that on July 31, 1931, plaintiff was informed that the trustee had instituted foreclosure proceedings on behalf of all of the bondholders as a step incidental to the required reorganization; that thereafter the defendants, Straus National Bank, the defendant committee, the trustee and the mortgagor devised a plan of reorganization; that the plaintiff received a letter from the said Protective Committee dated January 28, 1932, stating that the bonds must be deposited before February 5, 1932, and that nondepositing bondholders would be entitled to their pro rata share of the foreclosure price of the property, and that the amount received would, in the opinion of the committee, be substantially less than the value of the new securities to be received by those who deposited their bonds.

The bill further alleges that some of the bondholders who were dissatisfied with the plan intervened by leave of court in the foreclosure proceedings in the circuit court of the City of St. Louis, Missouri, and the court having heard the witnesses and having jurisdiction of the subject matter, entered a decree finding that the plan of reorganization agreed upon between the bondholders committee and the mortgagor was inequitable and detrimental to the rights and interests of bondholders; that the trustees were co-operating with S. W. Straus & Co., and the committee in promoting said plan; that Melvin L. Straus, as an officer of S. W. Straus & Co., had interests in conflict with his duties as trustee, and had taken a position to the disadvantage of the bondholders; that said court by said decree removed Melvin L. Straus as trustee and appointed Ernest A. Green as successor trustee, appointed receivers of the mortgaged property, designated the attorneys for the interveners as attorneys for the receivers, and directed that the new trustee,

together with William R. Orthwein, cotrustee, proceed with the foreclosure.

Defendants in substance deny all specific acts of wrongdoing which are charged in the bill and states that all their acts were done pursuant to its powers and duties in the premises and that the plaintiff has no reason to complain and that his losses were the result of economic conditions beyond their control and without fault on their part.

From the decree of the circuit court of the City of St. Louis, Melvin L. Straus and William R. Orthwein appealed to the Supreme Court of Missouri. The said decree of February 4, 1932, was reversed by the Supreme Court upon a stipulation by the parties thereto. The bill charges that the stipulation was improperly entered into, but this the answer denies.

The decree of which complaint is made was vacated and another decree entered by the circuit court of the City of St. Louis on June 3, 1932, under which the property was sold. The second decree entered in the St. Louis court approved the actions of the trustee and confirmed the sale of the property.

The theory upon which the bill was filed and the aid of a court of equity invoked, was that the defendants had conspired or agreed in the original sale of the bonds to plaintiff and others similarly situated, to defraud them by misrepresentation of the facts and by their subsequent actions in relation thereto. In order to prove this first part of the charge it was necessary for the plaintiff to show that the representations were false at the time they were made and were known to be false by the makers thereof or should have been known; that the plaintiff believed the representations made to be true and relied thereon to his damage. There was no proof in relation to any of these.

Next it was charged that the St. Louis court found in its first decree that the trustee was improperly act-

ing and should be and was removed, and that the sale under the first decree was improper and was for an inadequate sum and that it refused to confirm the sale and refused to approve the actions of the committee and appointed a receiver to take possession of the property and hold it for future disposition. This would have been convincing proof of some of the material allegations in the plaintiff's bill but the decree, making this finding against the defendants, was vacated and set aside by a stipulation of the parties and whether it was improperly set aside or not, there is no proof offered for our consideration. Suffice it to say that the decrees of the courts of St. Louis, Missouri, must, under the law, be received by the courts of Illinois with full faith and credit. In this respect there was no evidence introduced to prove the charges of improper conduct on the part of the parties or their attorneys in the St. Louis courts.

As before stated, whilst this is a bill for an accounting, no decree for an accounting was ordered nor any had. The court appeared to base its decision on the fact that the property was sold in St. Louis for $300,000, which it found was, of itself, proof of fraud. Inadequacy of price alone is not conclusive proof of fraud, although, taken in connection with other circumstances, it may be a strong element to consider with other proof which together would be sufficient to find a transaction fraudulent, especially as to a trustee owing a duty to his *cestui que* trust. *Miller v. McAlister,* 197 Ill. 72, and cases cited.

It is next contended by the defendants that if the plaintiff wishes to recover, he must appear before the St. Louis courts for his remedy.

This is an action *in personam* and against a trustee and others for failure to perform an alleged duty to their *cestui que trustents*.

The basis for the fraud, if any, was established at the time of the sale of the bonds to the plaintiff in Chicago and subsequent actions by the various defendants in relation thereto. Inasmuch as all the parties defendant are residents of this state, the mere fact that the real estate upon which the bonds were issued is located in St. Louis, would not necessarily require the plaintiff to go into the courts of St. Louis for relief on charges of fraud allegedly committed, at least partially, in this jurisdiction.

From a review of the record, without discussing the matter at further length, we can only say that there is not sufficient evidence to sustain the decree.

If the plaintiff desires an accounting from the trustee on the allegations of fraud, we think he is entitled to have it, provided the proper issues are made by the pleadings, the procedure in chancery cases followed and the findings of the court are made in consonance with the issues and the proof. Other questions, such as burden of proof, rulings on admissibility of evidence, manifest weight of evidence and other points raised in the briefs, will not be decided at this time as we are disposing of the matter on other grounds.

For the reasons heretofore given, the decree of the superior court of Cook county is reversed and the cause is remanded for a new trial.

*Decree reversed and cause remanded.*

HALL, P. J., and HEBEL, J., concur.