350

NORTH COMMUNITY BANK, Plaintiff-Appellee, v. AETNA BANK, as Trustee, *et al.*, Defendants (Patricia John, Defendant-Appellant).

First District (1st Division)   No. 1—88—0147

Opinion filed May 7, 1990.—Rehearing denied August 9, 1990.

Gottlieb & Schwartz, of Chicago (Jeffrey P. Smith, of counsel), for appellant.

Altheimer & Gray, of Chicago (F. John McGinnis and David H. Latham, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This case involves consolidated actions contesting title to a piece of commercial property located at 3244 West Irving Park Road, Chicago, Illinois (the Subject Property). Prior to February 1, 1984, the subject property was owned in joint tenancy by Harry John (Harry) and his father, Peter John (Peter). The property contained a one-story building used as an autobody shop. The subject property was legally described as lots 28, 29 and 30 in block 3 in William Boldenweek's addition to Grant Park in section 14, township 40 north, range 13, east of the third principal meridian, in Cook County, Illinois, commonly known as 3244 West Irving Park Road, Chicago, Illinois.

Patricia John (Patricia), who was married to Harry, received a lien on the subject property to secure a $15,000 judgment, which she received pursuant to the judgment of dissolution of marriage between Harry and Patricia John. Patricia's judgment settled her interest in the marital home payable upon (1) Harry's remarriage; or (2) the sale of the subject property; or (3) not later than five years after the entry of the judgment of dissolution of marriage. On April 4, 1983, she properly filed a memorandum of judgment, which contained the correct legal description.

Marshall J. Belgrad (Belgrad), Harry's attorney in the divorce proceedings, also received a judgment for $3,500 in attorney fees against Harry. On July 6, 1981, Belgrad recorded his memorandum of judgment against the subject property but incorrectly stated the legal description as, *"Lot 29* in block 3 of William *Boldenwick's* Addition to Grant Park, a Subdivision of the East One-Half (½) of the Southeast Quarter of section 14, *Range 40, Township 13*, East of the Third Principal Meridian, commonly known as 3244 West Irving Park Road, Chicago, Cook County." (Emphasis added.) The legal description only named lot 29, mischaracterized Boldenweek as Boldenwick, and inverted the range and township numbers. On February 2, 1982, the sheriff of Cook County recorded Belgrad's certificate of levy. In the certificate of levy, Belgrad again incorrectly described the property as

he did in his memorandum of judgment. Then on March 4, 1982, Belgrad assigned his judgment against Harry to Patricia, which was recorded on March 12, 1982. The assignment recited that Patricia paid Belgrad the full value of the judgment plus fees and interest.

The sale of the subject property was noticed for March 17, 1982. Accordingly, on February 22, March 1, and March 8, 1982, the sheriff of Cook County published in the Chicago Daily Law Bulletin a notice of sale with respect to the subject property. The notice of sale, however, inverted the range and township numbers, characterized the property as in "Boldenwick's Addition" rather than "Boldenweek's Addition," *listed all three lots*, but recited the correct common description. On March 1, 1982, the notice of sale was posted at the Clark Street entrance to the county building, at the La Salle Street entrance to Chicago City Hall, and the sheriff's office in the Daley Center, and in the Cook County law library in the Daley Center. The sale date was continued 10 times but was never renoticed. Instead, the continuance was by proclamation.

On February 1, 1984, Peter and Harry purportedly conveyed, by a warranty deed, title to the subject property to Aetna in trust. Then Aetna executed a mortgage to North Community Bank (NCB) on or about June 8, 1984, to secure a $100,000 note for the benefit of Jiro Yamaguchi (Yamaguchi), who was allegedly the beneficiary of the land trust.

The sheriff's sale finally occurred on September 26, 1984, and Patricia was the successful bidder. The redemption period expired on March 26, 1985. On March 28, 1985, the sheriff executed a certificate of sale, which repeated the erroneous legal description as described in the notice of sale. On the same day, the sheriff executed another certificate of sale to correct the township and range numbers, which was recorded. However, the legal description still stated "Boldenwick's" instead of "Boldenweek's," and included lots 28 and 30 even though the levy was only on lot 29.

In April 1985, Aetna defaulted on their mortgage. Three actions relating to the facts stated above were consolidated, and Patricia was named as one of the defendants. Trying to defend the action, Patricia issued subpoenas to NCB, Aetna and Balmoral, the nursing home where Peter resided. In those subpoenas, Patricia requested testimony and production of documents concerning the formation of the Aetna trust and NCB's loan to Yamaguchi, as well as documents relating to Peter's competency. Then, NCB filed a motion for summary judgment seeking to foreclose its mortgage and quiet title by cancelling Patricia's sheriff's deed. Subsequently, Patricia asked the court to

enforce her subpoenas so that she could present evidence of a fraudulent conveyance to Aetna, which was necessary to contest NCB's summary judgment motion. The court refused to consider Patricia's request until after hearing the motion for summary judgment. During the summary judgment motion, the trial court was advised that there was an issue concerning whether the transfer of title to Aetna was valid and whether NCB had any knowledge concerning Harry's alleged attempt to alienate the property in violation of court order. Patricia, however, did not present any evidence to oppose the summary judgment motion. Therefore on December 31, 1987, the trial court granted summary judgment for NCB and quashed Patricia's subpoenas, finding that they were irrelevant. Additionally, the court held that Patricia's sheriff's deed was invalid because she was chargeable with constructive notice of certain irregularities in the sheriff's procedures. Patricia appeals.

■ Initially, Patricia argues that the trial court erred in granting summary judgment for NCB because she had outstanding discovery requests, which may have proved fraud in the title's conveyance and that NCB, therefore, would not have standing to a quiet title action. We disagree. While it is true that NCB must have acquired legal title in itself to maintain a quiet title action (*La Salle National Bank v. Kissane* (1987), 163 Ill. App. 3d 534, 542, 516 N.E.2d 790), Patricia had not presented affidavits or evidence, only argument, regarding alleged fraud, which would vitiate NCB's title and would defend against NCB's summary judgment motion. Therefore, the trial court properly heard the summary judgment motion prior to Patricia receiving discovery.

■ ■ Next, Patricia argues that the alleged errors in the sale were not errors or they were "hypertechnical" and inconsequential, and then argues that she did not have actual notice of the errors. We disagree. These errors in combination were significant: the sheriff's deed differed from the documents connected with the levy and sale; the notice of sale stated the sale would be of the right, title and interest of Patricia when the levy was on the right, title and interest of Harry; the notice of sale stated the incorrect legal description; and the certificate of sale was not recorded until two days after the redemption period expired. Moreover, Patricia had constructive notice of the irregularities since she was the assignee of the judgment levy, had her own lien on the property, and was a party to the lawsuit out of which the judgment arose. (*Henderson v. Harness* (1900), 184 Ill. 520, 530, 56 N.E. 786, 789.) As a result of the assignment, Patricia stepped into the shoes of Belgrad and was chargeable with such no-

tice as Belgrad had. (*Barnes v. Freed* (1930), 342 Ill. 73, 80, 173 N.E. 795.) Also, when Patricia purchased the subject property at her own execution sale, she was chargeable with notice of any irregularities in the sale. (*Miller v. McAlister* (1902), 197 Ill. 72, 85, 64 N.E. 254, 259.) Consequently, the sheriff's sale was rendered voidable.

■ For the foregoing reasons, the trial court properly granted summary judgment for NCB because there were not any genuine issues of material fact presented by affidavits, depositions, or exhibits in opposition to NCB's motion for summary judgment and Patricia had constructive notice of irregularities in the sheriff's sale.

Affirmed.

CAMPBELL and MANNING, JJ., concur.