# HENRY MANSFIELD

*v.*

# SARAH ALWOOD.

1. TRUSTEE—*not chargeable with sale money of land, when contract of sale is rescinded.* Where one who holds lands in trust sells the same and receives a portion of the purchase money, and the purchaser afterwards abandons the purchase, and the contract is rescinded, such trustee should not be required, in addition to conveying the land to his *cestui que trust,* also to account to him for the purchase money he has received on such abandoned contract.

2. SAME—*chargeable with rents and profits.* A mortgagee in possession, or a trustee in charge of productive real estate, should be charged with all the rents and profits that he receives, or that by reasonable efforts he could have received.

3. PRACTICE IN THE SUPREME COURT—*examination of master's report— to what extent.* Where exceptions taken to items in an account stated by the master, are overruled, and the evidence taken before the master, as to such items only, is brought before the Supreme Court, the court can pass upon the correctness of such items only; but where all the evidence before the master is brought up, the court will examine it all, and if the account, as stated by the master, is, in the aggregate, correct, it will be approved, although some of the items complained of were improperly allowed.

APPEAL from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

Mr. S. S. PRETTYMAN, for the appellant.

Mr. H. E. DUMMER, Mr. J. S. EWING, Mr. E. A. WALLACE, and Mr. JOHN W. PITMAN, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This case was previously before this court, and is reported in 59 Ill. 496. The cause was then remanded, with directions to the court below, to decree appellant to convey two-thirds of the premises to appellee, and on his failing or refusing, that the master be required, on appellant's behalf, to so convey; and that the court below refer the case to the master, to hear evidence and to state an account for the whole amount he paid

Ruckman to redeem, and all moneys expended by him in payment of taxes legally levied, or for necessary repairs upon the premises, with legal interest, and deducting therefrom all that he may have received as the rents, issues and profits of the land; then, from the balance, if any there should be, thus chargeable upon the whole lands, an amount should be ascertained, bearing the same proportion to the whole sum as the share of Esther A. Phillips therein, as such heir at law, shall bear to the whole lands conveyed. The decree then specifies the time for paying the sum found due, and for a conveyance to complainant.

Under this decree the court below referred the matter to the master, who heard evidence, stated an account, and reported the same to the court with the evidence. On the coming in of the report, and not before, each party filed exceptions to the report, and afterwards, by consent of parties, the report and exceptions were referred to the master to hear and settle the same. On argument before him he amended his report so as to allow complainant $5158.31. The master, thereupon, filed his amended report in the court, and thereupon Mansfield again excepted. The court below overruled the exceptions, and rendered a decree that he convey to Sarah Alwood an undivided two-thirds of the land in controversy, and in default, the master convey on his behalf; and that he pay to her $5158.31 within one hundred and twenty days, and, on default, that execution issue, and the decree be a lien on Mansfield's third, to secure the same. He brings the case to this court on appeal, and asks a reversal.

In so far as the decree requires two-thirds of the land in controversy to be conveyed by appellant to appellee, it is strictly in conformity to the decree of this court when the case was remanded for further proceedings. There has been no grounds shown why such a decree should not be sustained, and it, to that extent, must be affirmed.

We then come to the questions raised on the master's report of the statement of the account. He allowed to complainant $13,311.18, as the two-thirds of the rents and profits derived

from the land; and to appellant $8152.87, as two-thirds of the money advanced to redeem from Ruckman's decree, and for payment of taxes and for necessary improvements and repairs. This is in accordance with the directions in the opinion of this court, when the cause was remanded.

Exceptions are urged to many items of allowance, but as we think the evidence would have authorized a much larger allowance against Mansfield than was given by the master, we shall only consider a few of the exceptions, to determine whether the decree shall be reversed.

First, the evidence shows that appellant sold several eighty-acre tracts of this large body, and received a portion of the purchase money, but the purchasers, after making some improvements and occupying the land for a time, abandoned their purchases, and appellant is charged with the money so received, with interest. The sum thus charged is $5881.45. We are at a loss to perceive on what principle, in equity, he can be charged with these receipts. Appellee has the land, and on what principle should she also have the money? How, or by what process, does she acquire the slightest claim to it? Appellant made the sale, but, if, being unable to convey title, the agreements were rescinded, the simplest principles of justice required him to restore it to the purchasers, or, in some manner, compensate them for the money thus paid to him. Appellee was no party to the transaction, nor does it appear that she ever ratified these sales.

But, it is said that she has the right to ratify and bind herself to them. It may be she could have done so by offering, in her bill, to convey the land on receiving the purchase money, or by tendering a deed to appellant before the account was taken, provided he had consented thereto. But we infer, from the evidence, he had rescinded all these contracts because of the doubt whether he could convey title, and he thereby disencumbered the title, it may be, to the benefit of herself. She, at any rate, after appellant had rescinded these contracts and they ceased to exist, could not compel him to purchase, especially simply by claiming the purchase money after the same

decree under which the account was taken decreed the *land* to her. It would be highly inequitable and unjust to decree it to her. She had paid or given nothing for it, and has shown nothing that raises either a legal or equitable claim to it, and it was wrong to charge appellant with it in stating the account. But, if these purchases have not been rescinded, he may, for aught that appears, if, on partition, the lands thus sold should fall to him, be compelled to convey. Or he may be compelled to refund the money to the purchasers. If sued, he is not bound to plead the Statute of Frauds, or Limitations, and if he should not he would be liable to refund, if he could not convey according to his agreement.

It is a rule, that a mortgagee in possession, or a trustee of this character, must be charged with all the rents and profits that he has received, or could have received, by reasonable efforts. *Roberts* v. *Fleming,* 53 Ill. 153. Here, as we understand the evidence, there were 887 acres in cultivation for several years before the account was taken, except a portion, owing to its wet condition—say 40 acres,—and suppose appellee occupied 71 acres that appellant did not occupy, that would leave 776 acres that appellant, or those under him, occupied. Now it appears, from the evidence, there were 250 acres in 1863, 350 in 1864, and 240 in 1867, in cultivation. If, then, we take a third of 111 acres, claimed to be in the possession of the Alwoods, as not susceptible of cultivation, from each of these amounts, we have, in 1863, 213 acres which has or should have been rented for eleven years; also 313 acres more, for say nine years, and 213 acres more for seven years. Then, if it was rented at fifteen bushels of corn per acre, as the evidence shows was customary, there should have been received ninety-eight thousand seven hundred and fifteen bushels, which, at thirty-three cents a bushel, which the evidence, we think, clearly shows was less than the average, it would give, say $32,575, as the receipts. But suppose one-third is deducted and we place it at ten bushels of corn per acre, we then have sixty-five thousand bushels, which, at thirty-three cents per bushel, gives $21,717; which would give to appellee about $9488, exclusive of the

purchase money, which would admit of a further deduction of a considerable amount. Or if the land had been rented at three dollars an acre, as the amount of grain per acre shows that it should, at average prices, have been five dollars, or more, the same quantities, for the same length of time, would have yielded $19,958, which would give appellee $7729, exclusive of the purchase money, instead of the sum allowed her. From all of the evidence in the case, it does seem to us that but slight effort, at most not more than ordinary diligence on the part of appellant, would have produced these results; and if he did not, he must have been guilty of culpable negligence, such as should charge him, at least, to the extent of the amount allowed by the master and approved by the court.

Appellant has brought all of the evidence heard before the master, into the record, and brings it before us. We have seen proper to examine it to determine whether the result of the account stated, by the master, is inequitable or unjust. We, after a careful examination, are of opinion, that it would have warranted a larger sum.

Appellant, we are fully satisfied, has no grounds to complain. Had he only brought into the record the evidence heard as to each item to which he filed exceptions, we should then have been limited to the exceptions, and would, perhaps, have been compelled to reverse, to have a further account taken; but all of the evidence being before us, we have looked into the merits of the decree, and although the money received on the sale of the land was improperly charged to appellant, still, if it was excluded, the evidence requires the amount allowed over and above that, and any error in computing interest, and all other items to which exceptions were taken.

Seeing, on the whole record, no error, the decree of the court below must be affirmed.

*Decree affirmed.*