(No. 23143.—

THOMAS STASEL *et al.* Appellants, *vs.* THE AMERICAN HOME SECURITY CORPORATION *et al.* Appellees.

*Opinion filed December 16, 1935—Rehearing denied Feb. 6, 1936.*

FRANK E. DINGLE, for appellants.

CLAUDE J. DALENBERG, for appellee The American Home Security Corporation.

Mr. JUSTICE SHAW delivered the opinion of the court:

On October 31, 1928, the appellants, Thomas Stasel and Verona Stasel, his wife, filed a bill in the nature of a bill of review in the circuit court of Cook county, alleging themselves to be the owners of certain real estate therein described; that on July 19, 1927, the appellee the American Home Security Corporation had filed a bill in the circuit court of Cook county for the foreclosure of a certain alleged trust deed therein described, and further alleged that summons in the foreclosure proceeding had, in fact, never been served upon the appellants, notwithstanding the return of the sheriff showing such service to have been had in accordance with the statute. The bill further alleged that the appellants had no knowledge of the issuance of the summons nor of their having been made defendants to the bill of foreclosure until about four months after the decree of foreclosure and sale had been entered; that an order of default had been entered against them on November 29, 1927, and an order of reference taken the same day without their knowledge; that the master had reported a finding that the appellants had executed the note and trust deed in question, the amount due thereunder, etc., which report was filed on December 19, 1927, and on the same day a decree of foreclosure was entered in accordance with the master's report and recommendations; that the premises were sold by the master on January 5, 1928, and a deficiency judgment of $206.14 entered against the appellants, and that neither of the appellants had any knowledge of any of the proceedings in the circuit court until about the first of the following April. The bill further alleged that previous to the foregoing proceedings the appellant Thomas Stasel had become surety for a loan to the appellee Charles Kubasack, and in connection with that transaction had given an absolute deed to the property in question. (This deed appears from the evidence to have been given to Samuel A. Boersma, who deeded it back to

the Stasels on January 16, 1928.) The bill alleges that at about the time of these transactions someone in the real estate office where the loan was handled gave Stasel some papers and stated they were court papers and that it would be necessary for him to appear in court; that Stasel was ignorant of court procedure and believed it was a suit against him on account of his suretyship, and that it all happened after the decree had been entered; that the papers were not handed to him by a deputy sheriff but by someone in the real estate office, and that the papers were two copies of summons in the foreclosure suit. The bill then sets forth certain alleged errors of law apparent on the face of the decree, which are not argued and require no consideration. It further alleges that the trust deed and note foreclosed by the prior decree were forgeries and that neither of the appellants received any consideration for them, and that they never acknowledged or delivered the trust deed nor authorized anyone else to do so for them. The bill further alleges that on August 3, 1926, they had entered into an executory contract for the sale of the premises to Kubasack and his wife for $6425, payable $500 in cash, $1300 by assuming a first mortgage of that amount, (which is not the mortgage here in question,) and the balance in payments of $40 per month, under which executory contract Kubasack and wife were in possession at the time of the foreclosure, and that Kubasack had kept up the payments on said contract until after the completion of the foreclosure in question, and that they did not learn of the foreclosure until they sought to forfeit the contract for non-payment of the installments. The bill alleged that the appellants would have resisted the foreclosure and presented the defense of forgery had they known they were defendants to the action of foreclosure, and alleged the fact to be that the return on the summons was either a matter of mistaken identity or a fraudulent mis-direction to the sheriff by someone to them unknown.

Charles Kubasack and wife answered, neither admitting nor denying any of the allegations of the bill, and the American Home Security Corporation by its answer put in issue all of the material allegations as to the knowledge of the appellants, the service of summons and the alleged forgery.

The master, who heard the evidence, found that the appellant Thomas Stasel had enough education to sign his name, could read a little English, understood only the simplicities of real estate transfers, and knew the general meaning of the words deed, notes, mortgages, etc., having owned at least two pieces of real estate; that Verona Stasel could not read or write, except to sign her own name, and had no understanding of business matters; that both of the appellants and Kubasack were of Czecho-Slovakian origin, and that Kubasack was a real estate dealer and the notary public who signed the acknowledgments to the trust deed that had been foreclosed, and also the same person to whom the check was made by the American Home Security Corporation for the purchase price of the forged instruments. The master further found that the premises in question had been sold to Kubasack on installment payments, as set forth in the bill; that on April 2, 1927, Kubasack obtained a loan from Samuel A. Boersma and induced Stasel to give Kubasack a deed to the premises in question as security; that on January 16, 1928, Stasel paid the note to Boersma, who thereupon quit-claimed the property back to Stasel and his wife. The master further found that the signatures of Stasel and his wife on the trust deed that had been foreclosed were forgeries, and that neither of them ever received any consideration for the same; that the notes had never been negotiated and there were no intervening equities; that while Thomas and Verona Stasel were credible witnesses they were not corroborated, and that upon authority of *Marnik* v. *Cusack,* 317 Ill. 362, the

master felt himself required to find that their evidence was insufficient to overcome the return of the officer, and that he would therefore find that they were duly served with summons in the foreclosure suit; that they had used due diligence in filing their bill of review; that the equities were with them, and he recommended a decree in accordance with the prayer of the bill of review.

The trial court overruled exceptions and entered a decree in accordance with the master's recommendation. The decree of foreclosure was vacated and all the proceedings had were set aside. An appeal was taken to the Appellate Court for the First District, where the judgment of the trial court was reversed, and the cause is brought to this court by appeal, on leave granted.

Before coming to any question of law involved in the case it must first be determined whether or not the Stasels were served with summons in the foreclosure suit, as shown by the return of the officer, and on this point we do not think there can be any serious doubt. The officer testified before the master in support of his return and pointed out Mrs. Stasel as the person on whom he served one copy of the writ and with whom he left a copy for her husband at his usual place of abode, all as shown by the official return. Stasel later had two copies of the writ, and although he testified someone gave them to him in the real estate office, his possession is nevertheless corroborative of the officer's testimony and return. The testimony of Mr. and Mrs. Stasel that they were never served is entirely uncorroborated. We have held in *Davis* v. *Dresback,* 81 Ill. 393, *Kochman* v. *O'Neill,* 202 id. 110, and *Marnik* v. *Cusack, supra,* that the stability of judicial proceedings requires that the return of an officer be not set aside merely upon the uncorroborated testimony of the person on whom service was had but only on clear and convincing evidence. We find that the appellants were duly served with summons in the foreclosure suit.

It is not contended that the American Home Security Corporation was guilty of any fraud in purchasing the mortgage paper or in procuring its decree of foreclosure, neither is it contended that any fraudulent trick or device was used to prevent the Stasels from making a defense. Their sole position in that respect was, as stated in their bill, that they had not been served with summons, did not know about the foreclosure proceeding, and that had they known about the foreclosure they would have presented their defense of forgery. There is here no question of newly discovered evidence or of fraud in procuring the judgment itself. On this point the United States Supreme Court in *United States* v. *Throckmorton*, 98 U. S. 61, 25 L. ed. 93, said: "On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed. Mr. Wells, in his very useful work on Res Adjudicata, says, sec. 499; 'Fraud vitiates everything and a judgment equally with a contract; that is, a judgment obtained directly by fraud, and not merely a judgment founded on a fraudulent instrument; for, in general, the court will not go again into the merits of an action for the purpose of detecting and annulling the fraud.'" In the same case the court said: "The mischief of re-trying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

In the case of *Miller* v. *Barto*, 247 Ill. 104, a title was dependent upon the validity of a judgment which had been obtained on default against one Muench. Muench was ignorant of the English language and did not know that

he had been sued or served with process. In that opinion we said: "A court of equity, however, will not give ear to one who merely asks it to relieve him from the conse- . quences of his own negligence or that of his agent. A court of equity is only moved to action by diligence, and does not interpose to protect one who has not exercised proper diligence to protect his own interests and to make a defense which was available to him in a court of law. This court long ago said that the rule is absolutely inflexible, and cannot be violated even when the judgment in question is manifestly wrong in law or in fact, or when the effect of allowing it to stand will be to compel the payment of a debt which the defendant does not owe.—*Hinrichsen* v. *VanWinkle,* 27 Ill. 334." In the same opinion the court said: "The claim was simply unfounded, and if it could be set aside in equity on that ground the same rule must apply to all cases where a judgment has been wrongfully recovered in an action at law. There is no ground upon which a court of equity can relieve Muench from the judgment."

In the case at bar the appellants were served with summons and there was no fraud or trick which prevented them from appearing and defending. There is no question of newly discovered evidence, as their defense was then as perfect as it is now. It is worthy of note that on the next day after the summons was served they obtained a payment from Kubasack on his contract, which brought it up to date, and it might well be that this lulled their fears as to any possible loss of property in which Kubasack had such a large equitable interest. In any event, the judgment was a direct result of their own negligent disregard of the summons of the court, which had jurisdiction, and under the authorities cited that judgment cannot now be set aside. This is the conclusion arrived at by the Appellate Court, and its judgment will be affirmed. *Judgment affirmed.*

Mr. Justice Wilson took no part in this decision.