(No. 27623.—

Jessie Rogers, Appellant, *vs.* Rosanna Sarah Barton *et al.*—(Fred C. Sorge *et al.*, Appellees.)

*Opinion filed March 21, 1944.*

DANIEL A. COVELLI, (MAYER GOLDBERG, of counsel,) both of Chicago, for appellant.

HARRY A. BIOSSAT, of Chicago, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county. It is the second time the cause has been appealed to this court. The first was dismissed for want of a final appealable order. (*Rogers* v. *Barton,* 375 Ill. 611.) The primary question is as to the title to several parcels of real estate situated in the city of Chicago. Secondary to the title issue and dependent upon its outcome are questions arising out of an accounting for rents and profits from the lands. Prior to August 29, 1934, Mary Sorge owned twenty parcels of real estate, one of which is referred to as tract A, and the others are numbered 1 to 19, inclusive. On August 31, an execution was issued on a judgment which had been entered against her two days before and tracts 1 to 18, inclusive, were levied upon. A sale was had and tracts 1 to 17 were sold to John H. Dalton, who was the holder and owner of the judgment.

There being no redemption, a bailiff's deed was executed to Dalton May 5, 1936, for tracts 1 to 17. On May 26 thereafter, Dalton and his wife deeded all the tracts conveyed by the bailiff's deed to Jessie Rogers. The following day Jessie Rogers conveyed a one-sixth interest in tracts 1 to 14 to Rosanna Sarah Barton. Rogers thereupon assumed possession of a part of said tracts, and on December 8, 1936, filed this suit to partition tracts 1 to 14. She also sought a decree quieting the title in her to said 14 tracts as against the claims of Mary Sorge. Mary Sorge filed a counterclaim praying that the bailiff's deed to Dalton, the Dalton deed to Rogers and the Rogers deed to Barton be set aside upon such equitable terms as to payment of redemption money as the court should deem fit and proper. The counterclaim also included a prayer for an accounting in the event the deeds should be set aside. Rosanna Sarah Barton was a party defendant to the Rogers complaint and she and John H. Dalton were both parties defendant to the counterclaim.

Evidence was heard before the master on the deed issue and after objections and exceptions were overruled, a decree was entered July 2, 1940, vacating the deeds as prayed in the counterclaim and dismissing Rogers's complaint for want of equity. The first appeal then followed and by reason of a reservation of jurisdiction over the title being included in the decree, the appeal was dismissed as not being final.

After the appeal was dismissed, Mary Sorge died. The executors of her will, who were also the sole beneficiaries thereunder, were substituted as parties. Evidence on the accounting feature was heard before the master and an account was stated. Objections and exceptions were overruled and a judgment entered in favor of the Sorge estate and against Jessie Rogers for $47,673.61. This appeal followed. Questions arising out of the decree which vacated the deeds are included herein with questions as to certain

items in the accounting matter. The only parties on this appeal are Jessie Rogers, who will be referred to as plaintiff, and the interests of the Sorge estate and its beneficiaries, who will be referred to as counterclaimants.

Counterclaimants contend that certain irregularies occurred in the levy of the Dalton execution and conduct of the sale which, coupled with the grossly inadequate sale price, warrants the setting aside of the deeds. Plaintiff claims she was a *bona fide* purchaser of the property without notice of the claims of any of the equities urged by counterclaimants.

The facts pertinent to the issue on the deeds are that in August, 1927, Mary Sorge entered into a contract of sale with William L. Fletcher and Hattie Fletcher, his wife, to sell and convey to them tract A. In the course of the transaction the Fletchers and Mary Sorge executed a trust deed conveying tract A as security for the payment of their note for $4500. The note was not paid, and on August 29, 1934, John H. Dalton, owner of the note, caused a judgment to be entered in the municipal court of Chicago against Mary Sorge for $4983.58, and later in the same proceeding a judgment was entered against the Fletchers for $5008.93. From August 29 to the latter part of October, Dalton and his attorney conferred with Mary Sorge and her representatives in reference to payment of the judgment. Applications for a new loan were made but for reasons not material here the same were rejected. All negotiations were futile but plaintiff's evidence is that during that time Dalton and his attorney warned Mary Sorge and her representatives that if the judgment was not paid, her property would be subjected to a levy. An execution was issued August 31, 1934, and, on November 1, a levy was made on tracts 1 to 18, inclusive, as the property of Mary Sorge. A certificate of levy was recorded. No action was taken at that time or any other to collect any part of the judgment from the Fletchers.

Counterclaimants contend that no demand or notice to Mary Sorge preceded the levy although she was, during that period of time, within the jurisdiction. Her testimony was that no demand or notice was given her and that she had no notice the levy had been made. The bailiff's return on the execution certified that on November 22, he made demand on Mary Sorge "by delivering to Dolly Wilkins (maid,) a member of her family, a person of the age of ten years or upwards, a copy of this Writ." The master found that Dolly Wilkins was not an employee of Mary Sorge and was not a member of her family. The evidence fully sustains such finding. Dolly Wilkins testified that she had never received a copy of the execution.

The sale was held on December 5, and tracts 1 to 17, inclusive, were sold to Dalton on his bid of $4100. Due credit for the amount of the bid was entered on the judgment and the difference in the amount of the judgment and such credit remained as a lien against tract 18, which was Mary Sorge's homestead.

There is a sharp conflict in the evidence as to whether Mary Sorge had notice of the sale after it was made and before the period of redemption expired. The attorney who represented Dalton at that time testified to having mailed a letter to her son, who, the evidence shows, had been representing his mother in these matters. The same attorney also testified to having mailed a letter to Mary Sorge. If the letters were received, they were sufficient to give notice of the sale. However, the persons to whom they were claimed to have been addressed testified they had not been received. Plaintiff contends Mary Sorge was chargeable with *laches,* in that she did not redeem from the sale within the statutory period, and this issue of fact as to notice is relevant to that question. It will be referred to later. It had no effect upon irregularities as to service of the execution which the law required to be made before the levy.

Evidence was introduced as to the value of the several tracts. The master found the value of the properties levied upon was slightly in excess of $80,000. Plaintiff attacks such finding and charges that there are certain discrepancies in the evidence which, if allowed, would reduce such value. Counterclaimants contend the objections which plaintiff now makes were not properly preserved by objection and exception. Without regard to the merit of counterclaimants' contention and conceding the discrepancies of which plaintiff complains, there would still remain a valuation of the tracts levied upon that would be so much in excess of the execution demands that it would have to be held as an excessive levy. And the fact that Dalton's bid on tracts 1 to 17, and for which the property was sold to him, was approximately $900 less than the amount of his judgment leaves no question but what the sale price was so grossly inadequate as to shock the conscience of a court of equity. Attention is called to the fact that the sale was made subject to taxes and special assessment liens. There is no evidence as to the amount of such unpaid liens and the valuations can not be reduced on that account.

In *Barnes* v. *Freed,* 342 Ill. 73, it was held that equity demands that an officer in whose hands an execution has been placed for levy shall give notice, if practicable, to the execution debtor. Following a review of the earlier cases, it was said: "While the statute concerning judgments, decrees and executions does not specifically require that an execution be served on the defendant, yet the statute on exemptions provides that a debtor may, within ten days after a copy of execution has been served upon him in like manner as summons are served in chancery, file a schedule of his personal property. (Cahill's Stat. 1929, p. 1313.) We are of the opinion that it is the intent of the statute concerning judgments, that, wherever practicable, service of the execution on the debtor should be had. Even though it was conceded that under the statute the sheriff was not

bound to serve the execution on appellee, this court has uniformly held that in equity his failure so to do is an irregularity which, taken with gross inadequacy of price, may be sufficient to justify equitable relief."

It is well settled in this State that gross inadequacy of price is not of itself sufficient to set aside a judicial sale, yet when such inadequacy is shown, coupled with slight circumstances indicating unfairness or fraud, either upon the part of the officer, the purchaser or the party to the record benefited by the sale, it will be sufficient for equitable intervention. Under such circumstances, the purchaser at a judgment sale can retain his advantage only by showing that he acquired his title by proceedings free from fraud or irregularity. (*Barnes* v. *Freed,* 342 Ill. 73; *Block* v. *Hooper,* 318 Ill. 182; *Miller* v. *McAlister,* 197 Ill. 72.) If the inadequacy of the sale price is any way traceable to, connected with or shown to have been the result of mistake, accident, surprise, misconduct, fraud or irregularity, the sale will generally be vacated. All facts which tend to show that any unfair advantage was procured by the purchaser or person benefited by the sale are competent to be considered and may amount to evidence of fraud. *Block* v. *Hooper,* 318 Ill. 182; *Logar* v. *O'Brien,* 339 Ill. 628; *Magnes* v. *Tobias,* 337 Ill. 605.

We do not regard the warning that Dalton and his attorney gave Mary Sorge before the issuance of the execution that if the judgment was not paid, her property would be levied upon, as being sufficient notice to her that the execution which had then been issued would be served upon her before a levy was made. The failure to give Mary Sorge notice that the execution had been issued and was in the hands of the officer for immediate levy if the judgment was not satisfied could well have been calculated to leave her in ignorance of the sale which was to follow.

Plaintiff contends that an officer's return on a writ can not be impeached by the uncorroborated evidence of

the person served. Cases cited are *Stasel* v. *American Home Security Corp.* 362 Ill. 350; *Marnik* v. *Cusack,* 317 Ill. 362; *Kochman* v. *O'Neill,* 202 Ill. 110. To make the service of the writ good, it had to be served upon Mary Sorge or some person over ten years of age who was a member of her family. The uncontradicted evidence is that Dolly Wilkins was not in Mary Sorge's employ as a maid, was not related to her, and if at the home at all, was there as a visitor of her uncle who was a son-in-law of Mary Sorge. These facts do not rest upon the uncorroborated testimony of Dolly Wilkins but on the testimony of four other witnesses. In the *Kochman case* it was said: "Every presumption in favor of the return is indulged, and it will not be set aside upon the uncorroborated testimony of the party upon whom service purports to have been made. * * * Justice, however, requires that the rules should not be so strict as to prevent all relief against a return which is untrue through fraud, accident or mistake, and if it is clear from the evidence that the defendant has not been served the judgment should be set aside."

The irregularity of service of the demand, the excessiveness of the levy, coupled with the gross inadequacy of the sale furnish sufficient basis for action by a court of equity.

Plaintiff contends she was a *bona fide* purchaser and that the irregularities of the bailiff's sale should not operate to defeat her title and interest in the property. The facts pertinent to such question are that on May 5, 1936, Dalton received the deeds for tracts 1 to 17 from the bailiff and May 26, thereafter, entered into a written contract with the plaintiff providing for the transfer of the property to her. It contained recitals of the facts as related relative to the judgment Dalton obtained against Mary Sorge, the one he obtained against the Fletchers, the levy, the sale of tracts 1 to 17 to Dalton and the existing lien for the amount of the deficiency judgment on tract 18, which is referred to as the homestead estate of Mary Sorge. It

was agreed that for a consideration of $8000, Dalton would convey plaintiff tracts 1 to 17, assign the deficiency judgment, the judgment he held against the Fletchers, and all interest he had in the trust deed. It provided that $5800 of the purchase price was to be paid in cash, the remaining $2200 to be held in escrow by the Chicago Title & Trust Company for a period of two years upon the condition that if, at any time within the two-year period, Mary Sorge succeeded in setting the bailiff's deed to Dalton aside, the $5800 paid would be repaid to plaintiff and the escrowee would pay her the $2200 held in escrow. The conditions of the repayment covered various contingencies, but suffice it to say that it has the appearance of having been designed to protect plaintiff against an action to set the bailiff's deed aside. The repayments were on condition that plaintiff would lose title to the tracts by litigation. The specific claim which Mary Sorge made in her counterclaim was not set forth in the contract, but the result she sought, recovery of her title, was the relief plaintiff and Dalton anticipated she would ask for and which they contracted to cover. After plaintiff acquired her title and made the payments under the conditions stated, she laid the foundation to start this partition suit. She conveyed a fractional interest in the tracts to Rosanna Sarah Barton. It will be noted that no claim has been made in behalf of grantee Barton, that her rights were any different or that she was entitled to any higher equity in the properties than plaintiff. When plaintiff filed her original complaint for partition, she made Mary Sorge a party defendant and as a part of the relief prayed, she asked that the title be quieted against Mary Sorge's claims. On July 17, 1936, plaintiff conveyed tracts 15, 16 and 17 to Josephine Donato but counterclaimants concede Donato was a *bona fide* purchaser and they make no claim in this suit against the tracts conveyed to her. During the pendency of this suit, the two-year period during which the $2200 was to be held in

escrow expired, and the said sum was paid to Dalton. When the payment was made, the Sorge interests in this litigation had not been finally determined and plaintiff contends that the fact she had to make the payment adds strength to her claim as a *bona fide* purchaser. The question is as to the notice she had of the Sorge claims when she acquired the deed from Dalton. Anything that transpired thereafter in reference to a fulfillment of the contract would not affect the evidence of her prior notice.

Plaintiff contends counterclaimants' rights are barred by *laches* and cite *Clark* v. *Glos,* 180 Ill. 556; *Osgood* v. *Blackmore,* 59 Ill. 261, and *Hamilton* v. *Quimby,* 46 Ill. 90, in support. An examination of those cases discloses that the facts are different from the facts in the instant case and that the principles therein announced are not applicable to the facts of this case. The facts of this case do not warrant the application of the doctrine of *laches.* Mary Sorge did not undertake to redeem from the sale within the statutory period allowed for redemption but if she had no notice of the levy and sale, as the evidence shows, then she was not chargeable with neglect until she had knowledge the sale had been held. The evidence is not definite as to when she first knew of the sale but the master's and chancellor's conclusions on that point will be sustained. However, it does not appear that Mary Sorge's delay prejudiced plaintiff's rights. In an equitable proceeding it is only when by delay or neglect to assert a right the adverse party is lulled into doing that which he would not have done or into omitting to do that which he would have done in reference to the property had the right been properly asserted that the defense of *laches* will be considered. *Forest Preserve Dist.* v. *Emerson,* 341 Ill. 442; *Troyer* v. *Erdman,* 320 Ill. 140.

The chancellor did not err in decreeing that the deeds be set aside and that the title to the lots in question vested in counterclaimants under the will of Mary Sorge.

In the decree entered July 2, 1940, wherein it was ordered that the deeds be set aside, it was also ordered that plaintiff account to Mary Sorge for the profits and gains she had received °out of the properties. The period of accounting was from May 27, 1936, to the date of the final decree, May 27, 1943. During that time plaintiff sold tracts 15, 16 and 17 to Josephine Donato and collected the sale price. She also collected rents from the tenants in possession of other tracts in excess of $100,000. In the same period she expended large sums in repairs and in the general upkeep of the properties. The master found that plaintiff should account to counterclaimants for $54,298.61. The chancellor sustained certain exceptions and reduced the amount due from plaintiff to counterclaimants to $47,673.61.

The evidence on the accounting feature consists of the testimony of a number of witnesses and a large number of exhibits. The evidence is voluminous, but counsel, in a very commendable way, have lessened the labor of the court by giving a general summary of the evidence. They have also limited their objections on this appeal to two items which are referred to in the record as (a) the Fewer rentals, and (b) the reimbursement moneys claimed.

Immediately following the execution and delivery of the Dalton deed to plaintiff, she began collecting rentals from the tenants in possession of the 17 tracts described in the deed. In addition, she collected rentals from tract A, this being the property which Mary Sorge and the Fletchers had encumbered with a trust deed to secure the payment of the $4500 note upon which the Dalton judgment was entered. The trust deed was not foreclosed and Dalton assigned it to plaintiff and she claimed the right of a mortgagee in possession by reason of condition broken.

Before entering into a discussion of the controverted items in the account it would be well to mention a few facts which disclose plaintiff's attitude in the accounting

matter. She engaged Charles E. Jensby, her son-in-law, as her agent in the management and care of the properties. Jensby identified certain items of expenditure and testified as to their correctness. The evidence of counterclaimants showed that in one instance a charge of $450 was made for repairs to a fire escape which repairs were never made. In another a charge was made for an item costing $125 while the evidence showed it cost but $35. Contracts were made for the painting of certain properties and credit was taken by plaintiff in excess of the cost. There are other instances of a similar character but the ones mentioned are sufficient to show the basis of counterclaimants' charges that plaintiff's accounting was permeated with fraud and bad faith.

The facts relative to the Fewer item are that for a period of time plaintiff managed the various tracts through her agent Jensby but on November 17, 1939, she leased four of these properties to Lucas Fewer and Marie Fewer from the first day of December, 1939, to November 30, 1942. The lease describes the property as being improved with apartment and commercial buildings, two of which contained eighteen apartments each, one with three store rooms and nine apartments, and the fourth with four apartments. It was agreed that lessees were to pay as rental $16,200 for the full term in monthly installments of $450 each. The lease also contained provisions in regard to the repairs, a part of which was to be paid by plaintiff and the balance by the Fewers. On October 1, 1940, plaintiff leased five more of said tracts to the Fewers, from October 1, 1940, to September 30, 1943. The rental for the full term was to be $3600, payable $100 per month. These properties were leased for dwelling purposes. This lease also contained provisions in regard to a division of the cost of repairs. Immediately after the execution of the foregoing leases, the Fewers employed Coleman and Company as their agent to manage the properties and collect the

rents. Coleman and Company's records show the amount collected from the several properties. Coleman and Company remitted to plaintiff the rentals specified in the lease and the balance was paid to the Fewers. Plaintiff accounted for the amounts specified in the leases but the evidence shows without contradiction that the Fewers received $23,694.63 from Coleman and Company as the remainder of the rentals. The Fewers are not parties to this suit. The master found, and the chancellor sustained the finding, that plaintiff should account to counterclaimants for the sum of $23,694.63, in addition to the rents received as specified in the leases. The evidence does not show that plaintiff received any part of the excess paid to the Fewers but counterclaimants contend that plaintiff's position in reference to the rentals of these properties is that of a trustee or mortgagee in possession with condition broken. They seek application of the equitable principle that requires a mortgagee or trustee to account not only for the rents and profits actually received but in addition those that could have been received had reasonable diligence been exercised.

It is well settled that equity imposes the duty upon a mortgagee in possession or a trustee not only to account for the rents and profits actually received, but also those that could have been received had there been an exercise of reasonable care and diligence. (*Rodman* v. *Quick*, 211 Ill. 546; *Mansfield* v. *Alwood*, 84 Ill. 497; *Roberts* v. *Fleming*, 53 Ill. 196.) We perceive of no reason why an *in invitum* trustee should not be held to the same rule of accounting as a voluntary trustee and that is all that counterclaimants are asking. In 65 Corpus Juris 885, in discussing the liability of a constructive trustee to account, it is said that after the position of one has been established as that of a constructive trustee, equity imposes the obligation to account in the same manner and to the same extent as other trustees.

Plaintiff's leases were made subsequent to the starting of this suit and more than two and one-half years after Mary Sorge had filed her counterclaim setting forth her claims to said property. The circumstances under which the Fewer leases were made and the wide margin of difference between the rentals specified in the lease and those actually collected leaves a basis for strong suspicion that the leasing of the properties to the Fewers was to protect plaintiff against the demands counterclaimants now make. The evidence shows plaintiff rented to the Fewers for a gross rental of $19,800 for the term, for which the Fewers received in excess of $43,000. Regardless of the legitimate inferences of fraud and circumvention that might be drawn from the evidence, it is obvious that the wide margin between rents contracted for and those actually received leads to the conclusion that plaintiff did not exercise that degree of care in leasing the premises to the Fewers which equity imposes upon a voluntary trustee. She was required to account as a trustee, and if there was a lesser amount than $23,694.63 which would have satisfied the rule of reasonable diligence, the burden was on her to show it. In the absence of such evidence, the court could not do otherwise than find that she did not realize from the property the amount which reasonable diligence would have produced. The only means by which such neglect can be measured is to adopt the sum paid by Coleman and Company to the Fewers and to charge plaintiff with that amount.

Plaintiff's final contention is in reference to a claim she makes for reimbursement of a part of the money she paid to Dalton. The judgment against Mary Sorge, including interest and costs, was $7129.30. This was a valid claim against Mary Sorge, and in plaintiff's purchase of tracts 1 to 17 and the deficiency judgment against Sorge, and in the payment to Dalton, these claims were satisfied of record. Plaintiff was given credit in her account for that amount but she contends the credit should have been

for the full amount which she paid Dalton, plus interest, or a total of $10,732.25. This leaves a difference of $3602.95, by which amount she claims her credit should have been increased. This amount did not go to the benefit of counterclaimants. It was paid to Dalton. It is substantially the amount, plus accumulated interest, which plaintiff and Dalton contracted to be held in escrow. Had she provided for a longer period for the money to be held in escrow or put it upon a proper condition, she would not have sustained the loss. However, it is not a matter that a court of equity can charge against the interests of counterclaimants. See *Feeney* v. *Runyan,* 316 Ill. 246.

The decree of the circuit court is correct and is affirmed.

*Decree affirmed.*