# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-4004

BLUE CROSS AND BLUE SHIELD ASSOCIATION,

*Plaintiff-Appellant*,

v.

AMERICAN EXPRESS COMPANY,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 99 C 6679—**Matthew F. Kennelly**, *Judge*.

---

ARGUED SEPTEMBER 22, 2006—DECIDED OCTOBER 30, 2006

---

Before EASTERBROOK, KANNE, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. For many years, American
Express has offered credit cards in the color of money.
When it added a blue card during the 1990s, trademark
litigation erupted. The Blue Cross and Blue Shield Associa-
tion uses a blue card (with a registered "Blue Card" service
mark) for its insurance and related health-care products; it
maintained that American Express's blue card would be
confused with its offerings. A settlement was reached in
2000: American Express acknowledged the Association's
senior rights in the term "Blue Card" and promised not to
use the word "Blue" in connection with any health-care or
insurance products. It also promised not to refer to its

customers as "Blue cardholders"; the Association agreed that in promotional materials American Express could use "Blue credit cardholder" or a similar expression as long as a word separates "Blue" from "card". Paragraph 5 of the agreement, now the bone of contention, reads in full: "American Express shall not use the word 'Blue' on its credit cards."

The settlement provided that the Association would dismiss its suit with prejudice but that "the District Court will retain jurisdiction to enforce this Agreement in the event of an allegation of its breach." A provision of this sort logically implies entry of a consent decree, for the settlement contemplates long-term undertakings. Instead, however, the court dismissed the suit and asserted a right to enforce the settlement. The only pertinent language is: "This court shall retain jurisdiction over this matter for purposes of enforcing the terms of the settlement agreement."

The district court did not set out those terms, so the order did not serve as an injunction under Fed. R. Civ. P. 65(d). Thus when the Association contended that in 2004 American Express reneged on its promise by issuing a blue credit card prominently emblazoned "Blue Cash", American Express denied that the district court's declaration of intent to retain jurisdiction had any effect. Relying on *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994), American Express maintained that a district court may retain jurisdiction only by incorporating the settlement into a judgment. See *Lynch v. SamataMason, Inc.*, 279 F.3d 487, 489 (7th Cir. 2002) (dictum to the effect that incorporation is essential); *Engle v. Foley & Lardner, LLP*, No. 05-4096 (7th Cir. Sept. 11, 2006), slip op. 4 (same); but see *Hill v. Baxter HealthCare Corp.*, 405 F.3d 572, 577 (7th Cir. 2005) (dictum to the effect that a bare declaration of intent to retain jurisdiction suffices).

The district judge sought to secure its jurisdiction by amending the judgment. Although the time for revision under Fed. R. Civ. P. 60(b) had long passed, and the sort of arguments the Association advanced would not have justified resort to Rule 60(b) anyway, see *Gonzalez v. Crosby*, 125 S. Ct. 2641, 2650-51 (2005), a clerical error may be corrected at any time under Fed. R. Civ. P. 60(a). The judge declared the 2000 order's failure to incorporate the settlement's terms to have been a "clerical error" and purported to "correct" that error by entering a new judgment reading in full: "Nunc pro tunc 5/23/2000, the stipulated motion for dismissal with prejudice, pursuant to FRCP 41(a)(1), and with each party bearing its own costs and attorney's fees is granted. The parties are directed to comply with the terms of the settlement agreement, which is hereby incorporated into the judgment. The Court shall retain jurisdiction for the purpose of enforcing the terms of the settlement agreement." See 225 F.R.D. 230, 233 (N.D. Ill. 2004).

Neither the district judge nor the parties paid any attention to the fact that the revised judgment, which is a form of injunction (the parties are "directed to comply"), *still* does not satisfy Rule 65(d), which provides (among other things): "Every order granting an injunction . . . shall be specific in terms; shall describe in reasonable detail, *and not by reference to the complaint or other document*, the act or acts sought to be restrained" (emphasis added). Nor does the amended order satisfy *Lynch*. If the 2000 order's failure to spell out the enforceable terms is a jurisdictional defect, the 2004 order is no better. But *Kokkonen* and *Lynch* were not the main hurdles; Rule 65(d) was. It is an old rule, easy to understand and easy to follow; that it should be ignored repeatedly by both the judge and counsel in large-stakes commercial litigation is unfathomable. See *Dupuy v. Samuels*, No. 06-1027 (7th Cir. Oct. 3, 2006), slip op. 2-5. Disdain for this simple requirement, compliance with which

would have made the continuation of federal jurisdiction clear, has led to years of complex, costly, and wasteful maneuvering.

As soon as the district court amended the judgment in 2004, American Express filed a notice of appeal, which was docketed as No. 04-4251. It insisted that Rule 60(a) does not authorize a change in the 2000 judgment—which, far from being a "clerical error," used precisely the language that the district judge had instructed the clerk to employ. There may have been a *legal* miscue—the Association and the district judge failed to appreciate *Kokkonen*'s significance—but Rule 60(a) cannot be used to change language that was poorly chosen, as opposed to incorrectly transcribed. See *United States v. Griffin*, 782 F.2d 1393, 1396-97 (7th Cir. 1986). The past cannot be rewritten; Rule 60(a) allows a court to correct records to show what *was* done, rather than change them to reflect what *should have been* done. The Association nonetheless defended the district court's decision and asked us to dismiss the appeal for lack of jurisdiction, contending that it was interlocutory (the only point of the amendment was to set up a hearing on the Association's motion for enforcement) and, if not interlocutory, that the time to appeal had expired in 2000.

While the parties prepared and filed the normal set of appellate briefs, plus supplemental jurisdictional memoranda at the court's direction, the district court proceeded with the hearing. Once again both the district court and the parties seemed oblivious to an important procedural rule: A notice of appeal deprives the district court of jurisdiction over the issues presented on the appeal. See, e.g., *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982). There is an exception for frivolous interlocutory appeals, see *Apostol v. Gallion*, 870 F.2d 1335 (7th Cir. 1989), but to use this exception the district judge must certify that the appeal is frivolous and allow the aggrieved party time to seek a stay from the appellate court. The

Association, which had contended that the appeal was outside our jurisdiction, did not avail itself of this procedure. At the conclusion of an evidentiary hearing the district court found (a) that American Express had not violated ¶5 of the agreement, and (b) that relief would be barred by laches even if a violation had been established. 2005 U.S. Dist. LEXIS 20733 (N.D. Ill. Sept. 6, 2005).

At this point the parties nimbly switched positions in No. 04-4251, then only a few days away from oral argument (so that three judges already had invested substantial work on the appeal). American Express proposed to dismiss its appeal in order to reap the benefit of victory in the district court—for if we were to accept its argument that the district court lacked subject-matter jurisdiction, the decision would be vacated and the parties would have to start over in state court. For its part, the Association, which had supported the Rule 60(a) order, now cast about for ways to restart the litigation. Because the Association did not agree to the dismissal—though it asked for attorneys' fees on the theory that the appeal had been frivolous—this court was entitled to impose conditions. Fed. R. App. P. 42(b). To ensure that the parties did not adopt inconsistent positions before a new panel assigned to the second appeal (which the Association was sure to file) we conditioned dismissal of the first appeal on the parties' undertaking to address in the second appeal a series of jurisdictional questions.

By the time the Association's appeal (No. 05-4004) had been briefed, this court began to wonder what the fight had been about. When the parties are citizens of the same state, or the stakes are less than $75,000, then only an exercise of the supplemental jurisdiction allows federal litigation to enforce a financial settlement of a case under the federal-question jurisdiction (as the Association's trademark suit was). The parties and the district court had devoted substantial energy to the question whether their disagreement about the "Blue Cash" logo may be resolved under the

supplemental jurisdiction. Yet the stakes substantially exceed $75,000, and a check of public records led this court to conclude that the parties are of diverse citizenship—as indeed the Association's complaint had alleged.

So the court directed the parties to file post-argument memoranda addressing still more jurisdictional questions, including the availability of jurisdiction under 28 U.S.C. §1332. The parties agree that complete diversity exists. American Express insists that the Association had to file a fresh suit under the diversity jurisdiction, but we can't see why. *Kokkonen* is about adjudicatory competence, not the number of filing fees a plaintiff must pay. As long as §1332 supplies authority to decide, the court may act without a fresh complaint. Indeed, if the settlement had been entered as a consent decree, as it should have been, the original federal-question jurisdiction would have sufficed. Parties need not file independent litigation to obtain the benefit of an injunction. Gobs of judicial (and law-firm) time have been squandered by the combination of sloppy drafting, repeated violations of Rule 65(d), and inattention to all sources of subject-matter jurisdiction. If these lawyers were physicians, their patients would be dead.

Next in line is the question whether the district court could act while American Express's appeal was pending. The norm (an old one of which *Griggs* is just a recent exemplar) that only one court at a time has authority in a case is designed to avoid wasteful duplication of effort and to avert the prospect that the appeal may make the district court's proceedings pointless, or the reverse. The district court's decision made appeal No. 04-4251 pointless.

Still, one established exception to the rule against simultaneous exercise of jurisdiction is that the district court may enforce its judgment while an appeal to test that judgment's validity proceeds. See, e.g., *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 565 (7th Cir. 2000).

Despite the fact that no formal judgment set out the parties' obligations, the order of 2000 and the amended order of 2004 demonstrated the district judge's willingness to treat the settlement as a consent decree. The proceedings to "enforce" that settlement were in the nature of a petition to hold American Express in civil contempt of court. Because a stay had been neither sought nor issued *sua sponte*, the district court was entitled to enforce its disposition even though American Express was simultaneously attempting to have it vacated on appeal. Compliance with Rule 65(d) would have made this clear; noncompliance did not diminish the district court's jurisdiction to hold a hearing and make a decision (though it may well have prevented the district judge from holding American Express in contempt). Holding the hearing when it did may have been imprudent, but the district court did not act *ultra vires*.

Because the district court rejected the Association's argument that American Express has violated ¶5 of the settlement, we need not decide whether the violation of Rule 65(d) independently would have defeated the Association's motion. See *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 461 (7th Cir. 1993) (stating flatly that violations of Rule 65(d) prevent enforcement of the purportedly incorporated documents). (*Dupuy* questions how far the approach of *D. Patrick* properly extends, and today is not the occasion for final resolution.) Whether the Association is entitled to prospective relief remains to be decided, however.

One of the district court's two reasons for ruling against the Association—that ¶5 bars only a standalone appearance of the word "blue," so that "Blue Cash" on a card is unaffected by ¶5—is reviewed independently on appeal. Having rebuffed (or held not credible) all parol evidence offered to elucidate the meaning of that paragraph, the district court based its decision on the agreement's raw text. That is well; the four-corners rule applies to the interpretation of consent

decrees. See *United States v. ITT Continental Baking Co.*, 420 U.S. 223 (1975); cf. *Firefighters v. Stotts*, 467 U.S. 561 (1984). This also means that a court of appeals may make up its own mind, without deference to the district judge's interpretation.

There is nothing ambiguous about the text: "American Express shall not use the word 'Blue' on its credit cards." We conclude that ¶5 means what it says: American Express must not put the word "blue" on any credit card. "Blue Cash" includes the word "blue" and thus violates ¶5.

Context supports the straightforward reading. Paragraph 3 provides that American Express "shall not apply to register the terms 'Blue' alone or 'Blue Card,' as a trade or service mark." Paragraph 4 says that American Express must not use "Blue cardholder" but that it *may* use "Blue [word] cardholder" in promotion or advertising. Paragraph 6 says that American Express may not "use the term 'Blue' alone or in combination with any other term(s) to brand or identify health care or insurance products or services." Thus when ¶5 says that "the word 'Blue'" must not appear *on* credit cards, the logical understanding is that the word itself is banned; it can't be redeemed by using the word in a combination—whether "blue credit cardholder," which ¶4 allows in advertising but *not* on credit cards, or "Blue Cash", which American Express added to a new version of its blue card in 2004.

Contractual ambiguities should not be read to create one-sided or unlikely business arrangements, see *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 860 (7th Cir. 2002), but (a) ¶5 isn't ambiguous, and (b) there is nothing one-sided about the bargain of which ¶5 is a component. The Association's principal goal was to keep the word "blue" off of a credit card—especially a blue card issued by a firm that refers to its customers as "cardmembers"—to protect its rights in the mark "Blue Card." Allowing the word "blue"

to be printed on a blue card whenever some other word also appears (which is how the district judge understood ¶5) could lead to both dilution and confusion.

Although the Blue Cross and Blue Shield Association (often known as "The Blues") is the senior proprietor of the "Blue Card" mark, the settlement allows American Express to use the color blue on a credit card and to employ phrases such as "blue credit cardholder" and "Blue from American Express" in promotional materials. Paragraphs 3 and 4 are favorable to American Express; paragraphs 5 and 6 favor the Association. It would not do businesses any favors to destabilize compromises of this kind by bending any one of the clauses in favor of a litigant that decides, after the deal has been struck, that it yielded too much. In the long run, everyone gains from predictability (and from rules that reduce the expense of litigating about such transactions).

Actually American Express did not decide that it had given away the store and seek relief so that it could get back to business. Instead it filed the settlement away and forgot about it; the phrase "Blue Cash" appeared not because American Express suffered seller's remorse, or because it wanted to test the bounds of the agreement, but because it paid no attention to its obligations. The people who made the business decision to market a "Blue Cash" card had no idea that American Express is obliged to limit its use of the word "blue" on, or in connection with, its credit-card business. Either they did not run the subject past corporate counsel, or the lawyers had developed amnesia. This makes problematic the district court's second ground of decision—one on which appellate review is deferential, to be sure, see *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 181 (7th Cir. 1994), but on which we are not satisfied that the district court's discretion has been soundly exercised.

The district court held the Association's protest barred by laches because American Express's blue card has displayed "blue" on its reverse side all along, as part of the customer-service phone number (1-888-blue-741). Because the Association did not remonstrate in 2000 when American Express failed to replace "blue" with numerals, it is disentitled to relief in 2004 when American Express added "Blue Cash" to the front of the card, the judge concluded. Now it is not clear to us that "1-888-blue-741" is "the word 'Blue'". The phone number contains the *letters* b, l, u, and e in order, but so do "bluebird" and "bluenose," neither of which is the *word* "blue." Letters used mnemonically in a phone number don't cause confusion about origin.

This is not, however, the Association's theme. Instead of arguing that printing "1-888-blue-741" on the card's reverse is proper under the settlement, and that it protested as soon as American Express overstepped its rights, the Association maintains that it relied on American Express to implement the settlement and therefore did not need to examine the cards between 2000 and 2004. That's nothing short of an assertion that litigants are *entitled* to sleep on their rights. If they are, then the doctrine of laches is defunct. The district court soundly rejected this line of argument. We therefore take it as established that the Association has tarried unjustifiably in attempting to enforce its rights.

Still, unwarranted delay is not enough to foreclose relief. There must also be prejudice—reliance, to one's detriment, on a belief that delay signaled approval of the acts in question. See, e.g., *Bennett v. Tucker*, 827 F.2d 63, 69 (7th Cir. 1987); *Rogers v. Barton*, 386 Ill. 244, 253, 53 N.E.2d 862, 866 (1944). Yet American Express has not argued that it assumed, from the Association's quiescence, that "1-888-blue-741" was proper under ¶5, that the agreement therefore forbids only the word "Blue" standing alone, and only then devoted resources to promoting its "Blue Cash" program. That would indeed be detrimental

reliance, but it is not what occurred. The "Blue Cash" logo and promotion were developed not in reliance on the Association's passivity, but in ignorance of the agreement's existence. As far as we can see, everything would have proceeded exactly as it did in 2004 had a protest by the Association in 2000 led American Express to replace "1-888-blue-741" with "1-888-258-3741". If that's so, then there is no reliance, detrimental or otherwise.

There is one possible way to show reliance, at which the district judge hinted. If the Association had alerted American Express in 2000 or 2001 to its view that the alphanumeric phone number violated the agreement, then perhaps American Express would not have filed it away but would instead have ensured that its legal department vetted the "Blue Cash" slogan before new cards were issued. The judge did not find, however, that this chain of "ifs" would have come to pass. Nor did the court discuss whether, if such attenuated causation and reliance can be established, delay wipes out the Association's rights, as opposed to limiting enforcement to prospective relief. Further proceedings therefore are essential.

The judgment is vacated. On remand the district court must promptly enter a consent decree that complies with Rule 65(d) and then address the question of detrimental reliance and the appropriate remedy, if necessary after a further hearing.

A true Copy:

   Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—10-30-06